JOSÉ EUGENIO y NELSON SÁNCHEZ RIVERA, representados por su madre natural, IRMA RIVERA VÁZQUEZ, peticionarios, *v.* CORTE DE DISTRITO DE BAYAMÓN, HON. F. GALLARDO DÍAZ, JUEZ, demandada; ENGRACIA SANTOS, interventora.

Núm. 1748.—*Sometido:* Noviembre 15, 1948. *Resuelto:* Enero 19, 1949.

---

494

*L. Santiago Carmona, Félix Ochoteco, Jr.* y *Luis E. Dubón,* abogados de los peticionarios; *José C. Jusino,* abogado de la interventora.

El Juez Presidente Señor De Jesús emitió la opinión del tribunal.

Engracia Santos, en su carácter de madre legítima de Eugenio Sánchez Santos, el 24 de noviembre de 1947, solicitó en la corte inferior la administración judicial de los bienes relictos por su referido hijo. Alegó en su petición que éste había muerto el 9 de agosto de 1947, ab intestato, en estado de soltería, dejando dos hijos naturales que tuvo en Irma Rivera, residente en Bayamón y además otro hijo natural, quien alrededor de aquella fecha había presentado una acción de filiación. Describió los bienes, de considerable valor, y alegó que los mismos se hallaban en peligro de ser dilapidados por haberse incautado de ellos Irma Rivera. Finalmente solicitó que de conformidad con el artículo 563 del Código de Enjuiciamiento Civil se ordenase al márshal que inmediatamente ocupase los bienes y recomendó para administrador judicial interino a Juan Bermúdez Sánchez o a cualquier otra persona de buena reputación.

El 10 de diciembre siguiente la corte inferior dictó una resolución ordenando la citación de los herederos, así como la de todos los acreedores de la herencia para que comparecieran el 22 de enero de 1948, a las nueve de la mañana,

para ser oídos en relación con las pretensiones de Engracia Santos. En la misma resolución nombró a Juan Bermúdez Sánchez administrador judicial interino mientras se nombraba uno permanente y le fijó una fianza de $6,000 la que una vez aprobada, lo pondría en aptitud de asumir los deberes del cargo. Asimismo expresó en su resolución que, teniendo conocimiento de que existían bienes muebles y semovientes, susceptibles de ser sustraídos u ocultados, ordenaba al márshal que procediera a incautarse de ellos, que practicara un inventario y los depositase en poder de persona abonada que podría ser el administrador judicial interino si para esa fecha hubiese cualificado, todo ello hasta que se hiciese el nombramiento de un administrador judicial permanente, u otra cosa se resolviese por la corte. Dispuso, además, que si se ocupaban dinero o documentos negociables, se depositasen en la secretaría del tribunal hasta nueva orden. En cumplimiento de esa orden el márshal tomó posesión de los bienes y practicó el inventario correspondiente.

El 10 de diciembre de 1947, Irma Rivera en representación de sus menores hijos, se opuso a la administración judicial y al nombramiento de Juan Bermúdez Sánchez como administrador. Oídas las partes, fué desestimada su oposición y quedó en pie el nombramiento de administrador judicial interino, quien el 12 de diciembre de 1947, prestó la fianza y tomó posesión del cargo. Para revisar dicha resolución Irma Rivera presentó en este Tribunal una petición de *certiorari*.

I

No existiendo testamento en este caso, preliminarmente debemos determinar si un heredero ab intestato o legítimo, en la hipótesis de que Engracia Santos lo fuere, tiene derecho a solicitar la administración judicial. La ley aplicable la encontramos en el artículo 556 del Código de Enjuiciamiento Civil, que en lo pertinente, dice:

"El albacea testamentario de la última voluntad de un finado, y en caso de que no lo hubiere nombrado, *o no dejare testamento con validez legal* el cónyuge de la persona finada, *o cualquier heredero forzoso*, o persona que se presente como heredero testamentario, o legatario, o cualquier acreedor con título escrito no asegurado que tuviere algún crédito contra la persona finada, podrá mediante una petición debidamente justificada en que se demuestren los hechos necesarios, solicitar la administración judicial de los bienes de dicha persona finada. . . ." (Bastardillas nuestras.)

El artículo 556 arriba citado contempla dos casos: (*a*) que se hubiera otorgado testamento con validez legal; y (*b*) que no se hubiera otorgado. Entre las personas con derecho a solicitar la administración judicial enumera a los herederos forzosos o persona que se presente como heredero testamentario o legatario, pero no menciona a los herederos legítimos para el caso de no existir testamento. Como debemos presumir que el legislador no usó inútilmente la frase "o no dejare testamento con validez legal", a nuestro juicio es claro que al usar la frase "herederos forzosos", su intención fué referirse a los "herederos legítimos", concepto más abarcador que el de "herederos forzosos", pues comprende a todas las personas que la ley llama a la herencia cuando no existe testamento. El heredero forzoso está incluído en la frase que le sigue, o sea, "persona que se presente como heredero testamentario" la cual comprende, tanto al heredero forzoso, como al voluntario. De no darse esta interpretación al artículo 556, los herederos legítimos, que de haberse otorgado testamento hubieran tenido la condición de forzosos, nunca podrían solicitar la administración judicial por no mencionarlos expresamente el artículo 556. Es significativo que la versión inglesa del referido artículo no usa la frase *"forced heirs"* (herederos forzosos) sino la de *"heirs at law"* que significa "herederos legítimos". Véase Bouvier's Law Dictionary.

██ Establecido que un heredero legítimo tiene capacidad legal para solicitar la administración, la cuestión ahora a resolver es si Engracia Santos es una heredera legítima en el presente caso. Ella sostiene que lo es. Su proposición

está predicada en el artículo 902 del Código Civil, según fué enmendado por la Ley núm. 448 de 14 de mayo de 1947 (pág. 947) el cual, en lo pertinente, prescribe:

"Artículo 902.—A falta de descendientes y ascendientes legítimos o legitimados, sucederán al difunto en el todo de la herencia, los hijos naturales legalmente reconocidos.

". . . . . . . .

"En caso de quedar ascendientes legítimos, los descendientes naturales reconocidos sólo percibirán de la herencia la porción que se le concede en el artículo 768 de este Código."

El artículo 768, según fué enmendado por la Ley núm. 13 de 1945 (pág. 39),([1]) fija la legítima de los hijos naturales reconocidos en la mitad del haber hereditario, del cual se deducirá el tercio en usufructo que corresponde al cónyuge viudo. Y de acuerdo con el artículo 738([2]) la legítima de los padres y ascendientes legítimos consiste de la otra mitad de la herencia. Si como Engracia Santos alega, debe aplicarse el artículo 902 en relación con el 738, correspondería a ella la mitad de la herencia, y siendo ello así, tendría el interés necesario para solicitar la administración judicial.

Por otro lado, la peticionaria en este recurso de certiorari, madre de los dos hijos naturales reconocidos, sostiene que la abuela paterna no tiene derecho a la herencia por excluirla el artículo 736 del Código Civil, según fué enmendado por la Ley núm. 447 aprobada también el 14 de mayo de 1947 (pág. 945) que dice:

---

([1]) El artículo 768, según fué enmendado en 1945, prescribe:

"Cuando el testador no dejare hijos o descendientes, pero sí ascendientes legítimos, los hijos naturales reconocidos tendrán derecho a la mitad del haber hereditario.

"Esto se entiende sin perjuicio de la legítima del viudo, conforme al artículo 763 de este Código, de modo que, concurriendo el viudo con hijos naturales reconocidos, se adjudicará a éstos sólo en nuda propiedad, mientras viviere el viudo, el tercio que a éste corresponde en usufructo."

([2]) El artículo 738 del Código Civil prescribe: .

"Constituye la legítima de los padres o ascendientes la mitad del haber hereditario de los hijos y descendientes. De la otra mitad podrán éstos disponer libremente, salvo lo que se establece en el artículo 763 de este código."

"Artículo 736.—Son herederos forzosos:

"1. Los hijos y descendientes legítimos respecto de sus padres y ascendientes legítimos, y los hijos naturales legalmente reconocidos respecto de sus padres y ascendientes naturales o legítimos.

"2. *A falta de los anteriores,* los padres y ascendientes legítimos respecto de sus hijos y descendientes legítimos.

"3.  .      .      .      .      .      .      .      ."

(Bastardillas nuestras.)

No existe el alegado conflicto entre los artículos 736 y 902 del Código Civil. Cada uno de ellos regula una situación distinta. El primero rige en la herencia testada; el segundo en la intestada. Si el causante en el presente caso hubiese otorgado testamento, no hubiera podido privar a sus hijos naturales reconocidos de la mitad de la herencia, que es la legítima que les señala el artículo 768. La mitad restante, por ser de libre disposición, hubiera podido el testador dejarla a cualquier otra persona. En ese caso, estando la madre excluída por los hijos naturales de conformidad con el artículo 736, no hubiera podido quejarse si su hijo hubiese dejado la mitad de libre disposición a cualquier otra persona que no fuera ella. Pero no existiendo testamento en el presente caso, interviene la ley y dispone de la herencia en la forma en que presuntivamente lo hubiera hecho el finado si hubiera otorgado testamento. El artículo 902 del Código Civil, que rige en la sucesión intestada, como hemos visto, prescribe que a falta de descendientes y ascendientes legítimos y legitimados, sucederán al difunto en la totalidad de la herencia los hijos naturales reconocidos. Pero concurriendo ascendientes legítimos con el hijo natural reconocido, y no existiendo descendientes legítimos o legitimados, entonces los hijos naturales reconocidos sólo percibirán, de acuerdo con el mismo artículo, en relación con el 768, la mitad del haber hereditario, del cual se sacará el tercio en usufructo que corresponde al cónyuge viudo. En este caso no hay cónyuge supérstite. Por consiguiente, corresponde el dominio pleno de la mitad de la herencia a los hijos naturales reconocidos y

la otra mitad pertenece a la ascendiente legítima Engracia Santos. Teniendo ésta la capacidad legal necesaria para solicitar la administración judicial, procederemos a discutir las otras cuestiones levantadas por Irma Rivera en oposición a la solicitud de administración judicial.

## II

■ La petición de administración judicial expone que Eugenio Sánchez Santos falleció sin otorgar testamento y que se hicieron pesquisas para determinarlo. No expresa, sin embargo, en qué consistieron estas pesquisas ni los hechos en que basa su conclusión de que falleció ab intestato. Fácil hubiera sido a la peticionaria, al exponer los hechos en que basa sus conclusiones, acompañar su petición de una certificación del Registro de Testamentos acreditativa de no existir constancia alguna de haberse otorgado disposición testamentaria. Pudiera ser que el finado la hubiera otorgado sin dejar legado alguno a la peticionaria y en ese caso no tendría ella capacidad legal para solicitar la administración por incumbir entonces ese derecho al albacea, si hubiere sido nombrado, o a cualquier heredero testamentario o legatario. Consecuentemente, si se hubiese otorgado testamento en las condiciones expresadas, la petición no aduciría hechos.

■ La peticionaria en este recurso también se queja de que el artículo 556 del Código de Enjuiciamiento Civil exige que la solicitud de administración judicial debe formularse bajo juramento, y que el prestado en dicha petición es nulo por no cumplir con los requisitos del artículo 118 del citado cuerpo legal. Este artículo, en lo pertinente, prescribe que en todos los casos de alegaciones juradas, *la declaración suscrita y jurada de la parte* debe afirmar qué hechos le constan de propio conocimiento y cuáles por información y creencia. Es en la declaración donde debe aparecer esa especificación. En la solicitud de administración judicial no se hizo. Por el contrario, es solamente en el juramento al calce de

la petición donde se dice: ". . . que soy la peticionaria en este caso y que todo cuanto he dejado expuesto y dicho en esta petición me consta de personal conocimiento, *con excepción de lo que dejo expuesto y alegado por información y creencia,* cuya información he creído cierta, y así lo juro para todos los efectos legales." (Bastardillas nuestras.) De estas manifestaciones se infiere que hay ciertos hechos alegados en la petición de administración judicial que no constan a la declarante de propio conocimiento. Sin embargo, no se especifica cuáles son esos hechos. Parece conveniente agregar que oportunamente la aquí peticionaria llamó la atención a la corte inferior de este defecto en el juramento de la solicitud de administración judicial, pues el 10 de diciembre de 1947 lo alegó como uno de sus motivos de oposición a la misma. Ello no obstante, dicha corte, por resolución de 13 de enero de 1948, expresamente declaró que el juramento era válido.

En tales circunstancias, es para nosotros claro que el juramento que sirvió de fundamento a dicha petición es nulo, ya que no se expresó en la petición qué hechos constaban a la peticionaria de propio conocimiento y cuáles por información y creencia. *Nazario* v. *Atlas Assurance Co.,* 24 D.P.R. 358; *Vendrell* v. *Pellot,* 21 D.P.R. 149; *Vázquez-Prada* v. *Rossy,* 20 D.P.R. 194; *Rivera* v. *Cámara,* 17 D.P.R. 528 y *Pérez* v. *El Consejo Ejecutivo de Puerto Rico,* 16 D.P.R. 712.

Somos refractarios a anular decisiones por motivos de procedimiento. Pero en este caso, aparte de que los derechos sustanciales de Engracia Santos no quedarán perjudicados por la anulación de la decisión recurrida, pues se le dará una oportunidad de enmendar su solicitud de administración judicial, los defectos de procedimiento, tanto en lo que respecta a las alegaciones sustanciales como al juramento, exigen la anulación.

*Procede, en consecuencia, anular la resolución recurrida y devolver el caso a la corte inferior con instrucciones de*

*que conceda un término razonable a Engracia Santos para que enmiende su petición de administración judicial, de conformidad con los principios expuestos en esta opinión. Mientras tanto, deberá tomar las medidas pertinentes para asegurar los bienes.*

El Juez Asociado Sr. Negrón Fernández no intervino.