*Debe confirmarse la sentencia apelada.*

IRMA RIVERA VÁZQUEZ, por sí y en representación de sus menores hijos JOSÉ EUGENIO y NELSON SÁNCHEZ RIVERA, como madre con patria potestad sobre los mismos, peticionarios, *v.* CORTE DE DISTRITO DEL DISTRITO JUDICIAL DE BAYAMÓN, HON. F. GALLARDO DÍAZ, JUEZ, demandada; ENGRACIA SANTOS, interventora.

Núm. 1838.—*Sometido:* Noviembre 6, 1950. *Resuelto:* Diciembre 8, 1950.

*L. Santiago Cardona*, abogado de los peticionarios; *José C. Jusino*, abogado de la interventora.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Expedimos auto de *certiorari* para revisar ciertas resoluciones de la corte de distrito en un procedimiento sobre administración judicial. Es necesario hacer una relación detallada del historial de este caso para poder determinar si estas resoluciones fueron correctamente dictadas.

Engenio Sánchez Santos tuvo con Irma Rivera dos hijos naturales reconocidos. A su fallecimiento en 1947, su madre legítima, Engracia Santos, radicó en la corte de distrito una petición sobre administración judicial de sus bienes. De conformidad con esta petición, la corte inferior nombró un administrador judicial interino. En un procedimiento anterior, expedimos el auto de certiorari, a solicitud de Irma Rivera en representación de sus dos hijos, para revisar la resolución nombrando al administrador. El 19 de enero de 1949 resolvimos que si Sánchez había muerto intestado, su madre tenía interés en la herencia y por consiguiente tenía derecho a solicitar el nombramiento de un administrador para la misma. Sin embargo, resolvimos que las alegaciones y el juramento de su petición eran defectuosos. En consecuencia, dejamos sin efecto la resolución nombrando un administrador judicial interino, con instrucciones de que se concediera a la Sra. Santos un término razonable para enmendar su petición a tenor con nuestra opinión. También ordenamos a la corte inferior

que tomara las medidas pertinentes para asegurar los bienes en el ínterin. *Sánchez* v. *Corte*, 69 D.P.R. 493.

En febrero 4, 1949, la madre del finado radicó una petición enmendada sobre administración judicial en la cual se corrigieron los defectos apuntados en la primera. También solicitó que la corte inferior dejara los bienes en statu quo hasta que se nombrara el administrador bajo la petición enmendada. La corte de distrito, el 4 de febrero de 1949, dictó una resolución señalando la solicitud enmendada para el 11 de febrero de 1949 y decretó "el statu quo de este caso" hasta que se resolviera lo procedente.

Un año antes de estos sucesos, o sea, en febrero 2, 1948, la Sra. Santos, madre del finado, radicó una moción solicitando el nombramiento de un defensor judicial para los menores, por el fundamento de que los intereses de éstos eran opuestos a los de Irma Rivera, quien reclamaba como suya la mitad de los supuestos bienes del finado. No se tomó acción alguna en cuanto a esta moción hasta después de nuestra resolución reportada en 69 D.P.R. 493. Algún tiempo después, en febrero 17, 1949, la Sra. Santos enmendó su moción sobre nombramiento de un defensor judicial para los menores. En febrero 18, 1949, se celebró la vista de la moción ante el Juez Willis Ramos, quien estaba actuando en la corte inferior en ausencia del Juez Gallardo, juez en propiedad. En febrero 21, 1949, el Juez Ramos nombró defensora judicial a la Sra. Santos, abuela paterna. Dice su resolución que ambas partes admitieron la necesidad del nombramiento de un defensor judicial para dichos menores.

En febrero 18, 1949 Irma Rivera, quien había estado en posesión de los bienes con anterioridad al nombramiento del administrador, radicó una moción solicitando que los mismos le fueran entregados por el administrador, cuyo nombramiento anulamos en nuestra decisión en 69 D.P.R. 493. En febrero 28, 1949 el Juez Ramos dictó una resolución diciendo que, en cumplimiento de nuestro mandato para que se tomaran las medidas pertinentes para asegurar los bienes, (1) el

márshal procederá a hacer un inventario y tomará posesión de los bienes; (2) el márshal entregará los bienes a Irma Rivera, mediante inventario, previa prestación por ésta de una fianza por $6,000; (3) y que el administrador judicial original deberá rendir cuentas.

En marzo 16, 1949 Irma Rivera, en representación de sus hijos, renovó su moción de inhibición[1] del caso por el fundamento de que no podía tener un juicio imparcial ante el Juez Gallardo. Los fundamentos para la inhibición que la parte actora expone en esta moción se limitan a la actuación tomada anteriormente por el Juez Gallardo en este caso. En marzo 17, 1949 el Juez Gallardo dictó una orden disponiendo la notificación de la moción al Procurador General para que se enviara a otro juez de distrito que entendiera y resolviera dicha moción de inhibición. Después de algunas demoras, que no es necesario detallar aquí, finalmente se celebró una vista sobre la moción en septiembre 26, 1949, ante el Juez Umpierre. Anteriormente, en agosto 17, 1949, Irma Rivera radicó un escrito aduciendo supuestos fundamentos adicionales en apoyo de su moción. La peticionaria alegó entonces, que posteriormente a la radicación de la moción original, el Juez Gallardo se había declarado enemigo personal del Lic. L. Santiago Carmona, abogado de Irma Rivera. Describe en detalle la acción tomada por el Juez Gallardo en seis casos en los cuales el Lic. Santiago Carmona representaba una de las partes. De acuerdo con ella, estas actuaciones del Juez Gallardo demostraron el prejuicio de éste contra su abogado.

En septiembre 28, 1949 el Juez Umpierre dictó una resolución denegando la moción de inhibición. La resolución del Juez Umpierre lee en parte como sigue: "Presentó como su

---

[1] La peticionaria había desistido de su moción radicada anteriormente porque su abogado tenía la impresión de que el Juez Gallardo sería nombrado para un cargo judicial diferente. Al no ocurrir esto, su abogado renovó la moción. Si bien la peticionaria algunas veces se refiere a esta moción como una de traslado, en realidad ésta era una moción de inhibición y así fué considerada por todas las partes.

primer testigo al propio Juez Fernando Gallardo y al terminar éste su testimonio, anunció el Lic. Leopoldo Santiago Carmona que renunciaba a las mociones de inhibición y traslado y arreglaría este asunto en otra forma. Luego de hecha esta renuncia, se sentó en la silla de los testigos y prestó su declaración. Ya terminada la discusión de las mociones anunció que interesaba presentar los testimonios de los Hons. Willis Ramos y Pablo José Santiago Lavandero, del reportero de 'El Imparcial' de Bayamón y del Sr. Ramón Díaz, Jefe de Redacción de 'El Imparcial', estos últimos en cuanto a una publicación de ese diario." La resolución de la corte inferior dice que al abogado se le dió hasta las 2 p. m. para presentar esta prueba, pero no dice si ésta fué en efecto presentada.

En su resolución el Juez Umpierre discute detalladamente las varias actuaciones del Juez Gallardo en un número de casos en los cuales el Lic. Santiago Carmona era abogado. Concluye que el que se cometan errores de hecho o de derecho no quiere decir que exista prejuicio o parcialidad.

El Juez Umpierre encontró que existían "diferencias de criterio" entre el Juez Gallardo y el Lic. Pablo José Santiago Lavandero, hijo del Lic. Santiago Carmona. Sin embargo, de acuerdo con el Juez Umpierre, nada de lo presentado durante la vista demostró prejuicio de parte del Juez Gallardo en contra del Lic. Santiago Carmona que pudiera descalificarlo.

En septiembre 28, 1949 el Juez Gallardo dictó una resolución modificando la dictada por el Juez Ramos en febrero 21, 1949 en la cual el último nombró a la señora Santos defensora judicial de los menores. En su lugar, el Juez Gallardo designó al Lic. José E. Bosch Roqué como tal defensor judicial debido a la existencia de intereses encontrados entre Irma Rivera y sus hijos y de intereses encontrados entre la señora Santos y los menores. En septiembre 28, 1949 el Juez Gallardo también dictó una orden complementaria eliminando a Irma Rivera como parte en la adminis-

tración judicial. Sin embargo, esta orden dice que como ella tiene radicada una demanda reclamando para sí la mitad de los bienes y podría convertirse en acreedora de la sucesión "la corte le reserva el derecho para solicitar por escrito su intervención y desde ahora anuncia que si así lo hace la corte le permitirá intervenir."

Aceptando la sugestión de la corte inferior, Irma Rivera radicó una moción de intervención, diciendo que obtenida la intervención, renunciaba a su oposición en cuanto al nombramiento del Lic. Bosch como defensor judicial de los menores. La propuesta demanda de intervención, entre otras cosas, alegaba que Irma Rivera tenía derecho a la mitad de los bienes de la sucesión debido a un acuerdo efectuado entre ella y el finado para dividir el capital adquirido mediante el trabajo combinado de ellos mientras vivieron en concubinato y operaban un restaurante y cafetín. Véase *Torres* v. *Roldán*, 67 D.P.R. 367.

En octubre 13, 1949, previo señalamiento y vista, la corte inferior nombró a Pablo Castillo administrador judicial en propiedad y ordenó a Irma Rivera, a quien se le había restablecido en la posesión de los bienes bajo la resolución del Juez Ramos de febrero 28, 1949, que rindiera cuenta a la corte en cuanto al dinero y propiedades de la sucesión.[2] En octubre 14, 1949 el márshal tomó posesión de los bienes supuestamente de la propiedad del finado y los entregó a Castillo. En octubre 19, 1949 Irma Rivera radicó una moción en la cual en efecto solicitaba de la corte inferior que la restituyera en la posesión de los bienes por el fundamento, entre otros, de que la mitad de los mismos le pertenecían.

En enero 13, 1950 la corte de distrito dictó una resolución declarando con lugar· la oposición de la señora Santos

---

[2] Esta actuación aparentemente se tomó en vista de la moción de la Sra. Santos, radicada el 3 de marzo de 1949, en la que solicitaba que la resolución del 28 de febrero de 1949, en la que se le quitaba al administrador original la posesión de los bienes, fuera dejada sin efecto, y en la que pedía también que la corte inferior procediera con arreglo a derecho a nombrar un administrador judicial.

en cuanto a la intervención de Irma Rivera y negando a ésta permiso para intervenir. En opoyo de su resolución la corte de distrito citó el caso de *Díaz* v. *Frontera*, 65 D.P.R. 695.

■ A solicitud de Irma Rivera expedimos auto de certiorari para revisar algunas de las resoluciones antes mencionadas. La primera resolución objetada por ella es la de octubre 13, 1949 nombrando a Castillo administrador judicial. Su teoría es que esto no ha debido hacerse porque los bienes estaban ya *in custodia legis* en virtud de la resolución del Juez Ramos de febrero 28, 1949 en la cual la propiedad fué restituída a Irma Rivera mediante fianza de $6,000 de conformidad con nuestro mandato en el caso reportado en 69 D.P.R. 493. Pero la actuación del Juez Ramos de su faz fué meramente temporal para asegurar los bienes en lo que se nombraba un administrador judicial en propiedad. Por lo tanto, la corte inferior estaba, no solamente autorizada, sino obligada bajo nuestra decisión en 69 D.P.R. 493, para dictar su resolución de octubre 13, 1949 nombrando un administrador judicial en propiedad, previa notificación y vista.

■ Irma Rivera seguidamente se querella de la resolución de enero 13, 1950 denegando su moción de intervención. Este es un recurso bajo la Ley de Procedimientos Legales Especiales, artículos 534–597, Código de Enjuiciamiento Civil, ed. 1933. Toda vez que ésta no es una "acción civil ordinaria" las Reglas de Enjuiciamiento Civil no son de aplicación. Véanse la Regla 81; *Pueblo* v. *Henneman*, 69 D.P.R. 995. Por consiguiente, la Regla 24, que gobierna las intervenciones, tampoco es de aplicación aquí. Pero sí es de aplicación el artículo 72 del Código de Enjuiciamiento Civil, en vista de que la Ley de Procedimientos Legales Especiales guarda silencio en cuanto a las intervenciones. Véase *Díaz* v. *Frontera*, supra. Y a los fines del presente caso, según dijimos en el de *Frontera*, la Regla 24 y el artículo 72 son sustancialmente similares.

■■ La corte inferior erró al denegar la moción de intervención. Los hechos en el caso de *Frontera*, en el cual

descansa, la corte inferior, eran diferentes. En aquél, los peticionarios que pretendían intervenir no tenían interés en la administración judicial propiamente dicha. Meramente deseaban obtener una sentencia personal contra los herederos, en un caso pendiente ante otra corte, y pretendían que la corte retuviera de los bienes a distribuirse entre los herederos, la suma que estaban reclamando en el otro pleito. *Cf. Sucn. De Jesús* v. *Corte*, 65 D.P.R. 1. Pero nada ganaban ni perdían por cualquier actuación efectuada en el procedimiento de administración judicial.

Por otro lado, en este caso Irma Rivera está realmente interesada en los procedimientos de la administración judicial. Reclama que la mitad de los bienes en poder del administrador no debían estarlo por pertenecerle a ella en vez de al finado. Y la situación se torna aún más seria por el hecho de que parte de su reclamación cubre un cafetín y restaurante que estaban siendo operados lucrativamente por ella y el finado. Tenía derecho a la adjudicación inmediata de su reclamación dentro de los procedimientos de la administración judicial tanto como la viuda de un finado que reclame que determinada propiedad le pertenece privativamente y no a la sociedad de gananciales. En resumen, Irma Rivera sostiene que en cuanto a la mitad de los bienes no debía haber administración judicial alguna, debido a que bienes de su pertenencia cayeron erróneamente en manos del administrador judicial. Ella tiene derecho a una vista en cuanto a esta cuestión dentro de la administración judicial, ya que ningún administrador tiene derecho a administrar propiedad que no perteneció al finado.(³)

██ La peticionaria también se querella de las resoluciones nombrando un defensor judicial. Pero la resolución

---

(³)*Pérez et al.* v. *Álvarez*, 32 D.P.R. 157; *Cabanillas* v. *Torrent*, 32 D.P.R. 42; *Planellas* v. *Pastrana*, 63 D.P.R. 285; *Mercado* v. *Mercado*, 66 D.P.R. 38, 78–80, 96–101; *Mercado* v. *Mercado*, 66 D.P.R. 811; *Sabater* v. *Escudero*, 23 D.P.R. 854, 858; *Ex parte Vega*, 28 D.P.R. 389, 392. Véanse *Rodríguez* v. *Corte*, 68 D.P.R. 978; 4 Moore's *Federal Practice*, 2da. ed., págs. 19, 31, 45, 55; Clark, *Code Pleading*, 2da. ed., págs 420–26.

del Juez Ramos de febrero 21, 1949 dice que esta acción se llevó a cabo con el consentimiento de ambas partes. Y en su solicitud de intervención, Irma Rivera específicamente alega que está conforme con el nombramiento del Lic. Bosch como defensor judicial de sus hijos, una vez se declare con lugar su moción de intervención. Como ya hemos resuelto que a ella se le dará la oportunidad de intervenir, somos de opinión que ha consentido al nombramiento del Lic. Bosch como tal defensor judicial. Además, su reclamación es claramente opuesta a los intereses de sus hijos. La corte inferior, bajo el artículo 160 del Código Civil, estaba por lo tanto obligada a nombrar un defensor judicial para los menores. Véanse *Sucesión de Álvarez* v. *El Registrador de la Propiedad*, 16 D.P.R. 602; *Agostini* v. *Registrador*, 39 D.P.R. 577; *Rodríguez* v. *Martínez*, 68 D.P.R. 450.

■ La última contención de la peticionaria es que el Juez Gallardo está impedido de actuar y no ha debido hacerlo después que la moción de inhibición le fué radicada. La dificultad en cuanto a este argumento es que nada existe en los autos ante nos que dé base para resolver este punto a favor de la peticionaria. Su moción de inhibición contiene serias imputaciones. Pero tales alegaciones requieren prueba. Y la peticionaria no ha elevado ante nos ninguna de la evidencia que se presentó ante el Juez Umpierre, cuando éste denegó la moción. El hecho de que el Juez Umpierre resolvió que existían "diferencias de criterio" entre el Juez Gallardo y el hijo del abogado de la peticionaria, no es de por sí suficiente para que debamos anular la resolución del Juez Umpierre en el sentido de que el Juez Gallardo no estaba impedido para actuar en este caso. No podemos, por lo tanto, intervenir con la actuación del Juez Umpierre a este respecto.

■ Ningún abogado puede arbitrariamente decidir que no desea que determinado juez juzgue un caso específico. Y los autos ante nos no contienen el más leve indicio de evidencia que demuestre que el Juez Gallardo esté prejuiciado

en este asunto. Por otro lado, los autos demuestran que, no obstante lo equivocado que pueda estar, el Lic. Santiago Carmona está de buena fe convencido de que no puede obtener un juicio imparcial ante el Juez Gallardo, debido a las "diferencias" que el Juez Umpierre resolvió existían entre el Juez Gallardo y el hijo de Santiago Carmona. Bajo todas las circunstancias, sugerimos por consiguiente al Juez Gallardo que haga arreglos para que otro juez entienda en este caso. Inhibiéndose el Juez Gallardo estaría cooperando para mantener a los tribunales fuera de la más leve sospecha de parcialidad. *Cf. In re González Blanes*, 65 D.P.R. 381, 403; *Junta Insular de Elecciones* v. *Corte*, 63 D.P.R. 819.

Sin que pretendamos señalar al culpable, creemos propio indicar que la liquidación de estos bienes ha sido innecesariamente retardada. Los intereses de todas las partes han sido incalculablemente perjudicados. La corte inferior deberá proceder prontamente a la liquidación de esta herencia.

*La resolución de enero 13, 1950 denegando la moción de intervención de Irma Rivera será anulada, y se devolverá el caso para ulteriores procedimientos no inconsistentes con esta opinión.*