CANDELARIA TRAVIESO RIVERA, demandante, *v.* RUBÉN DEL TORO RODRÍGUEZ Y ROYAL INDEMNITY INSURANCE CO., demandados; NEMESIO TRAVIESO SEPÚLVEDA, interventor y apelante.

Número 10797.

*Sometido:* 21 de abril de 1953. *Resuelto:* 29 de mayo de 1953

E. *Díaz Santana, A. Frías Márquez* y *J. López del Valle,* abogados del apelante; *F. Fernández Cuyar,* abogado de la demandante; *Pedro N. Colberg,* abogado de los demandados.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

Candelaria Travieso Rivera, como hija natural reconocida de Juan Travieso Arce, radicó en el antiguo Tribunal de Distrito de San Juan una demanda de daños y perjuicios contra Rubén del Toro Rodríguez y la entidad Royal Indemnity Insurance Co., alegando que un vehículo propiedad del demandado Rodríguez arrolló negligentemente a Juan Travieso Arce, causándole lesiones graves como consecuencia de las cuales falleció Juan Travieso Arce el 23 de abril de 1950. Contestaron los demandados negando negligencia de su parte y alegando, por el contrario, negligencia contributiva de Juan Travieso Arce. Después de haberse radicado la contestación, Nemesio Travieso Sepúlveda radicó una demanda de intervención alegando ser el padre legítimo de Juan Travieso Arce y que, como tal, era también el heredero forzoso del occiso, al igual que la demandante. Los demandados interpusieron una moción de desestimación contra la demanda de intervención y finalmente el tribunal a quo dictó una resolución y una sentencia desestimando la demanda de intervención. La actuación del tribunal inferior se basó en su criterio al efecto de que existiendo una hija natural reconocida de Juan Travieso Arce, ella era la única heredera del occiso, no teniendo el padre legítimo del occiso derecho hereditario alguno, en vista, especialmente, de que se trataba de una herencia testada. El tribunal a quo basó su resolución en el caso de *Sánchez* v. *Corte*, 69 D.P.R. 493.

El interventor ha apelado para ante este Tribunal y ha alegado los siguientes errores:

"Primero: El tribunal a quo erró al no reconocer que hubo preterición del interventor en el testamento otorgado por Juan Travieso Arce a favor de su esposa e hija natural reconocida, Candelaria Travieso Rivera.

"Segundo: Erró asimismo dicho tribunal al no reconocer como heredero forzoso al ascendiente legítimo, padre del fallecido, fundándose exclusivamente en el artículo 736 del

Código Civil según enmendado en 1947, sin dar aplicación o conectarlo con el 738 y el 768, reguladores de tal derecho.

"Tercero: Erró de igual modo el tribunal inferior cuando no reconoció el caso como uno de sucesión intestada al declarar que el interventor-apelante no podía ser considerado como heredero forzoso."

■■ De las alegaciones y de una estipulación firmada por las partes surge que el occiso Juan Travieso Arce había otorgado testamento abierto el 28 de abril de 1936, en el que instituyó como sus únicos y universales herederos a su esposa Celestina Robles, quien falleció el 16 de febrero de 1943, o sea, antes del fallecimiento de Travieso Arce, y a su hija natural reconocida Candelaria Travieso Rivera, y que al morir Travieso Arce vivía su padre legítimo Nemesio Travieso Sepúlveda.

La cuestión directamente planteada por las partes y resuelta por el tribunal sentenciador fué al efecto de si, tratándose de una herencia testada, la hija natural reconocida es la única heredera forzosa de la víctima del accidente o si el padre legítimo es también un heredero forzoso conjuntamente con la hija natural reconocida. Como veremos más adelante, la solución de ese problema no es decisiva en este caso, ya que un padre tiene derecho a reclamar daños y perjuicios por la muerte de su hijo, independientemente de si él es o no un heredero forzoso en una herencia testada, bajo las disposiciones del Código Civil. De todos modos, examinemos preliminarmente esa cuestión.

En *Sánchez* v. *Corte*, supra, se resolvió, incidentalmente, que habiendo testamento el padre legítimo no es un heredero forzoso, y sus derechos hereditarios como tal quedan excluídos por la existencia de una hija natural, bajo el artículo 736 del Código Civil, tal como fué enmendado por la Ley núm. 447 de 14 de mayo de 1947. Ratificamos esa doctrina, aunque ella no es aplicable a este caso.

Alega el apelante que el testamento fué otorgado el 28 de abril de 1936 y que, de acuerdo con la ley prevaleciente

en esa fecha los padres legítimos eran herederos forzosos conjuntamente con los hijos naturales. Empero, el causante falleció el 23 de abril de 1950, cuando ya regía la Ley núm. 447 de 1947, que excluyó, en una herencia testada, los derechos hereditarios de los padres legítimos cuando existían hijos naturales. La ley aplicable en cuanto a la efectividad jurídica de un testamento y en cuanto al contenido, alcance y extensión de los derechos hereditarios de los alegados causahabientes es aquélla que regía al tiempo del fallecimiento del causante, y no la ley que prevalecía al otorgarse el testamento. La situación legal prevaleciente al tiempo de la muerte del causante es la que determina los derechos hereditarios. Artículos 603, 610, 687 del Código Civil; 6 Manresa, 6ta. ed., págs. 62, 309, 312, 346, 347; 14 Scaevola 426, 4ta. ed.; Sentencias del Tribunal Supremo de España de 6 de mayo de 1927; de 18 de abril de 1934 y de 20 de marzo de 1916; 129 A.L.R. 859-873; 66 A.L.R. 1069, 1071; 57 Am. Jur. 660, sección 1021.

▇▇▇ El tribunal a quo resolvió que Nemesio Travieso Sepúlveda no tenía derecho a reclamar daños y perjuicios por la muerte de su hijo, ya que, existiendo una hija natural, él no es un heredero de su hijo, bajo el caso de *Sánchez* v. *Corte*, supra, no pudiendo entablar demanda bajo las disposiciones de la Regla 17(*k*) de nuestras Reglas de Enjuiciamiento Civil, que dispone lo siguiente:

"Cuando la muerte de una persona mayor de edad fuere causada por el acto ilegal o negligencia de otra, sus herederos o representantes personales podrán entablar demanda por daños y perjuicios contra la persona causante de la muerte; y si dicha persona estuviere empleada por otra, responsable de su conducta, podrán también entablarla contra ésta. En toda demanda con arreglo a esta subdivisión y la precedente, se regulará el importe de los daños y perjuicios que fueren justos, vistas todas las circunstancias del caso."

La Regla 17(*k*) coincide exactamente con lo dispuesto en el artículo 61 de nuestro Código de Enjuiciamiento Civil,

el cual, a su vez, es reproducción del artículo 377 del Código de Enjuiciamiento Civil de California.

No obstante lo dispuesto en la 'Regla 17(*k*), el apelante Nemesio Travieso Sepúlveda, como padre legítimo del occiso, tiene derecho a entablar demanda por los daños y perjuicios sufridos por él con motivo de la muerte de su hijo, aun existiendo una hija natural reconocida de la víctima del accidente, por los siguientes fundamentos, que expondremos en forma concisa, antes de iniciar una discusión adecuada de este problema:

(1) La fuente original de una reclamación de daños y perjuicios por la muerte de una persona es el artículo 1802 de nuestro Código Civil, y no la regla 17(*k*) ni el artículo 61 del Código de Enjuiciamiento Civil. *Orta* v. *P. R. Railway, Lt. & P. Co.*, 36 D.P.R. 743. Para que un reclamante pueda tener una causa de acción válida en tal concepto, no es necesario que él sea técnicamente un heredero, siendo suficiente el que él sea padre de la víctima, (Sentencia del Tribunal Supremo de España de 20 de diciembre de 1930) y que él sufra daños y perjuicios en virtud de su condición y relación de padre, considerando la destrucción de su derecho real o potencial a alimentos y la paralización permanente de los beneficios prospectivos que él podía haber recibido de su hijo. Cf. *Ruberté* v. *American R. R. Co.*, 52 D.P.R. 471; *López* v. *Rexach*, 58 D.P.R. 143; *Díaz* v. *Autoridad Fuentes Fluviales*, 71 D.P.R. 931.

■■ (2) Aun bajo el ámbito de la Regla 17(*k*), o sea, asumiendo que nos coloquemos en la esfera de aplicabilidad de esa regla, tal regla no se refiere a "herederos" en su sentido técnico de personas con derecho a heredar bajo determinada situación legal, o de personas a quienes se le trasmite la totalidad o parte de una herencia (*estate*) o del patrimonio que pertenecía al causante. Bajo la Regla 17(*k*), al igual que bajo el artículo 1802 del Código Civil, la causa de acción por muerte no es parte del patrimonio hereditario del causante y no se trasmite en virtud de las

reglas referentes a la sucesión hereditaria. Se trata de una acción directa y personal del reclamante originada en daños y perjuicios sufridos por el propio reclamante, estando el reclamante personalmente afectado, sin que él tenga que invocar derecho hereditario alguno. No se trata de una causa de acción adquirida en virtud de una trasmisión hereditaria, ya que tal causa de acción no era parte de los bienes del causante ni del acervo hereditario. Está envuelto un derecho propio y no un derecho hereditario, o sea, la acción se ejercita *"jure proprio"* y no *"jure hereditatis"*. Colombo, *Culpa Aquiliana*, pág. 708, 713, et seq. No se ha operado sucesión alguna de la causa de acción por muerte, ya que ella era personalísima del causante y se extinguió con su muerte. Lo que hace la Regla 17(*k*) es señalar una clase o categoría de personas a quienes se le denomina "herederos" en su sentido general y no técnico, como indicativas, tal clase y tal denominación, de un grupo de personas que en virtud de sus relaciones con el causante presuntiva o probablemente han sufrido o sufren daños y perjuicios con motivo de la muerte de otra persona. Desde el punto de vista de las proyecciones y de los propósitos que animaron la aprobación de la Regla 17(*k*) y de nuestro artículo 61 y el 377 de California, el padre debe ser considerado como uno de los "herederos" a que se refiere tal regla.

■ (3) El artículo 736 de nuestro Código Civil, según fué enmendado por la Ley 447 de 1947, y según fué interpretado por este Tribunal en *Sánchez* v. *Corte*, supra, se refiere a la identidad de los herederos forzosos con derecho a una porción de los bienes que integran la masa hereditaria, habiendo testamento, siendo esa porción conocida como la legítima, bajo el artículo 735. Lo que se indica, en síntesis, es que un causante no puede, a través de un testamento, excluir a ciertos parientes de determinada participación en la herencia. El artículo 736 presupone determinada distribución, impuesta por la ley, de parte de los bienes heredi-

tarios. Sus alcances están limitados a aquellas propiedades que formen o hayan formado parte del patrimonio del causante. La causa de acción por muerte no es parte de ese patrimonio, no es parte de los bienes que integran la herencia y, por lo tanto, el artículo 736 no es aplicable a esa causa de acción, que no está sujeta a las reglas de distribución forzosa. En su consecuencia, el caso de *Sánchez* v. *Corte*, supra, no es aplicable al de autos.

Lo que hemos expuesto podría ser suficiente para resolver este caso, pero nos sentimos obligados a ahondar más en este problema, que resulta ser un ejemplo notable de la mutua reacción de dos sistemas de leyes en nuestro ambiente, el Derecho Civil y el Derecho Común. Examinemos las reglas prevalecientes bajo ambos sistemas en cuanto a la naturaleza de la causa de acción por muerte.

### DERECHO CIVIL

■■■ Existe un conflicto en las autoridades en cuanto a si el Derecho Romano admitía una reclamación de daños y perjuicios por la muerte de otra persona. El Juez Cardozo, en *Van Beeck* v. *Sabine Towing Co.*, 300 U. S. 342, 344, 345, indica que los antiguos romanos implantaron los principios de que "una acción de carácter esencialmente penal no podía ser iniciada después de la muerte de la persona responsable del daño" (lo cual es distinto al problema que nos ocupa), que la venganza, aunque permisible en vida, no podía "extenderse más allá de la tumba", y que la vida de un ciudadano libre no podía tener valor monetario. Sin embargo, la evidencia más adecuada nos demuestra que bajo la Ley Aquilia, precursora de las doctrinas del derecho civil en cuanto a daños y perjuicios, y, bajo los Digestos, se permitía una acción de daños y perjuicios por la muerte de un pariente o de una persona de la cual dependía el reclamante. 6 Tulane L. Rev. 201, 212: "The Recovery of Damages for Wrongful Death at Common Law, at Civil Law and in Louisiana"; Colombo, *Culpa Aquiliana*, 709, 719. Los Códigos

del derecho civil han adoptado muchas de sus normas, no del Derecho Romano antiguo, pero del posterior, o sea, del "usus modernus pandectarum", que autorizaba tal reclamación. 38 Harv. L. Rev. 499, 502, nota 31. Tal criterio fué el adoptado en el siglo 17 por los tratadistas del Derecho Natural, Grocio y Puffendorf. *Manzanares* v. *Moreta*, 38 Jur. Fil. 874, 881; 38 Harv. L. Rev. 502, nota 32.

El artículo 1382 del Código Napoleónico, modelo indudable del artículo 1802 de nuestro Código Civil determinaba que "todo hecho del hombre que cause un perjuicio a otro, obliga a repararlo a aquél que por su culpa lo causó". Los tribunales franceses han interpretado ese articulado en forma amplia y general. Colombo, ob. cit., pág. 726. El caso de *Rolland* v. *Gosse*, resuelto por la Corte de Casación, supremo tribunal de ese país, quizás sea el mejor ejemplo de la interpretación dada al artículo 1382 del Código Napoleónico. 6 Tulane L. Rev. 201, 215. Se trataba de la reclamación de una viuda por la muerte de su esposo. La Corte de Casación estableció el derecho de una persona de recobrar, bajo dicho Código, daños y perjuicios sufridos por la muerte negligente o ilícita de otra persona.

Bajo el derecho francés, aquellas personas a quienes el fallecimiento de la víctima produzca un perjuicio moral o pecuniario personal, pueden pedir su reparación, sean o no herederas de la víctima, y la acción que les corresponde es independiente de la que correspondía a la víctima, y el perjuicio debe apreciarse exclusivamente en la persona del reclamante y no en la persona de la víctima. Planiol-Ripert, Derecho Civil Francés, Vol. 6, pág. 897, sección 658; 6 Tulane L. Rev. 216.

El artículo 1902 del Código Civil de España, idéntico al 1802 nuestro, dispone que el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La sentencia del Tribunal Supremo de España de 20 de diciembre de 1930 envolvía una reclamación de daños y perjuicios entablada por

la cónyuge viuda y los hijos de una persona que murió en un accidente de automóviles como resultado de la negligencia de la parte demandada. Se rechazó la alegación de los demandados al efecto de que los demandantes no habían acreditado su carácter de herederos y se resolvió que existía una causa de acción válida en favor de los reclamantes. Se indicó lo siguiente:

"Considerando además que el derecho a la indemnización pretendida por los recurridos no provenía de su difunto padre, sino que les pertenecía por su carácter de mujer e hijos del atropellado, ya que éste, al fallecer instantáneamente en la tarde del día 14 de junio de 1925 por consecuencia de haber sido arrollado por el autocamión, no llegó a poseer ni por un instante el derecho a ser indemnizado que se supone trasmitió a sus descendientes, sino que con ese acto nació para éstos la acción de indemnización, razón por la cual no tenían necesidad de justificar su carácter de herederos que no ostentaron en la demanda, sino solamente el de hijos y cónyuge del difunto Domingo González Martín, en cuyo carácter les pertenecía el derecho que invocaban y que no les fué negado de contrario, siendo por todo ello manifiesto que no se han infringido los artículos 807 y 658 del Código Civil, ni mucho menos los 503 y 504 de la ley de Enjuiciamiento civil, los que por su carácter personal no pueden ser invocados para fundamentar un recurso de casación por infracción de ley, según está declarado por la jurisprudencia de este Tribunal Supremo."

La sentencia del Tribunal Supremo de España de 8 de abril de 1936 envolvía un choque de trenes que produjo la muerte de tres ciudadanos de los Estados Unidos. Al amparo del artículo 1902, se resolvió que era procedente la reclamación de daños y perjuicios instada por el administrador de la herencia de esos tres ciudadanos, pero para que "la indemnización de perjuicios pueda darse se precisa la realidad probada de ellos con relación al reclamante" ya que, según se resuelve, el derecho a exigir indemnización de perjuicios no es de índole patrimonial, ni es parte del caudal hereditario de la víctima a los fines de la trasmisión sucesoria.

Medina y Marañón, en su obra Leyes Civiles de España, citan, a la página 517, dos sentencias del Tribunal Supremo de España de 2 de febrero de 1940 y 24 de diciembre de 1941, en donde se resuelve que la valoración de los daños no patrimoniales, como son las provenientes de pérdida de la vida, no puede descansar en el resultado de una prueba objetiva ni puede reducirse a leyes materiales de causalidad, correspondiendo hacer tal valoración al juzgador, prudencialmente, según las circunstancias de cada caso y conforme a las exigencias de la equidad. Véase además Rodríguez Navarro, Doctrina Civil del Tribunal Supremo, Vol. 4, pág. 5887 y sentencia del mismo Tribunal de 19 de mayo de 1934.

La misma disposición contenida en el artículo 1902 del Código Civil de España aparece en los códigos de los países hispanoamericanos, la mayoría de los cuales adoptó tal principio del Código Napoleónico, con la misma interpretación que se le había dado en Francia. 38 Harv. L. Rev. 500.

En Argentina los artículos 1109 y 1079 del Código Civil determinan que todo el que ejecute un hecho que por su culpa y negligencia cause daños y perjuicios a otra persona tiene la obligación de indemnizar, no solamente a la persona directamente damnificada sino que también a cualquier otra persona que hubiese sufrido perjuicios, aunque fuese de una manera indirecta. Interpretando tal disposición, la jurisprudencia federal y los "estudiosos del Derecho" argentino reconocen que "la acción civil para perseguir la indemnización de daños y perjuicios causados por delitos y actos ilícitos no es acción que dependa de la sucesión" y que se trata de una acción propia, directa y personal de los damnificados, sin que ellos tengan que acreditar su carácter de herederos, bastando, en algunos casos, con poner de relieve el grado de parentesco. Colombo, ob. cit., páginas 712, 713, 724. De acuerdo con el criterio de Colombo, "poco importa, por eso, que el damnificado sea o no pariente en grado sucesible o heredero forzoso del muerto. Desde el momento que

logre demostrar el daño recibido, no hay motivo para negarle la indemnización." (Pág. 728.)

En el caso de *Panamá R. R. Co.* v. *Rock*, 266 U. S. 209, la Corte Suprema de los Estados Unidos (disintiendo los Jueces Taft, McKenna, Holmes y Brandeis), resolvió que en la Zona del Canal de Panamá no se podía mantener la acción de daños y perjuicios por muerte de otra persona. Esa opinión ha sido severamente criticada, ya que el más alto Tribunal nacional ignoró el hecho de que en Panamá prevalecía el Código Civil, cuyo artículo 2341 es sustancialmente idéntico a los que hemos citado del Código Napoleónico y de los Códigos hispánicos, bajo los cuales es claro que procede tal acción. 38 Harv. L. Rev. 499; 6 Tulane L. Rev. 217, 218.

En Louisiana, el artículo 2294 del Código Civil disponía, lo mismo que el artículo correspondiente del Código Napoleónico, que todo acto de un hombre que cause daños a otro, obliga al que haya actuado con culpa a reparar el daño. Sin embargo, en el caso de *Hubgh* v. *N.O. & C.R.R.*, 54 Am. Dec. 565, se resolvió que tal artículo no permitía la acción de daños y perjuicios por muerte de otra persona. Esa decisión ha sido también duramente atacada y calificada como errónea, ya que ignora la interpretación dada en Francia al mismo artículo y prescinde de las reglas básicas del Derecho Civil. 6 Tulane L. Rev. 218 et seq.

Actuó correctamente, por lo tanto, este Tribunal al resolver en *Orta* v. *P. R. Railway, Lt. & P. Co.*, supra, que el artículo 1802 de nuestro Código Civil es la fuente básica de la acción de daños y perjuicios por la muerte de una persona y al resolver en *Ruberté* v. *American R. R. Co.*, supra; *López* v. *Rexach*, supra y *Díaz* v. *Autoridad Fuentes Fluviales*, supra, que tal reclamación no nace, necesariamente, de un derecho hereditario. Esos principios coinciden con los postulados del Derecho Civil.

DERECHO COMÚN

■ Bajo el Derecho Común, no procedía una acción civil por daños y perjuicios sufridos con motivo de la muerte ilícita de una persona, en ausencia de un estatuto específico que autorizase tal acción. Era aplicable la vieja máxima de *"actio personalis moritur cum persona"*, indicativa de que la acción de daños y perjuicios es personalísima y se extingue con la muerte de la víctima o del ofensor. Esa tesis tuvo su origen en alguno de los siguientes fundamentos (6 Tulane L. Rev. 203; *Van Beeck* v. *Sabine Towing Co.*, supra; 25 C.J.S. 1073, 1074):

(1) La acción de daños y perjuicios basada en una actuación torticera era considerada como un método legal de venganza personal, y al morir una de las partes, esta imposición personal de venganza es imposible.

(2) El acto de causar muerte es penable criminalmente, y el único interesado en adoptar represalias es el Estado, ya que se trata de una ofensa contra toda la comunidad y no meramente contra una persona específica. La actuación torticera queda fundida en el delito grave, bajo este criterio anticuado y superficial.

(3) La vida de una persona no puede ser valorada en términos de dinero.

La técnica del Derecho Común era al efecto de que los principios legales prevalecientes eran aquellos adoptados por los tribunales, a menos que hubiese un estatuto específico en contrario. Era necesario un estatuto para que quedase desvirtuada la regla general. El estatuto se consideraba como una excepción a la regla y, por lo tanto, se interpretaba restrictivamente. La regla prohibitoria de acciones por muerte, adoptada por las cortes y los tratadistas, era superficial, ilógica, anacrónica y desprovista de utilidad social. Era contraria a la realidad ambiental y servía de muralla a la satisfacción de necesidades sociales. Especialmente la revolución industrial trajo, como secuela, una mul-

tiplicidad de accidentes y de muertes, como penalidad social del progreso económico. Se hizo urgente la aprobación de estatutos que eliminase una regla tan arcaica y obsoleta. En el año 1846 se aprobó en la Gran Bretaña el famoso estatuto de Lord Campbell, que concedía una acción por muerte en beneficio del cónyuge, padres o hijos del occiso, concediéndose aquellos daños y perjuicios justos que estuviesen en proporción con el perjuicio sufrido. Los tribunales ingleses interpretaron ese estatuto al efecto de que la causa de acción por muerte no se adquiría en virtud de una trasmisión hereditaria sino que era una acción directa y personal del reclamante. Resolvieron específicamente esos tribunales que un padre podía demandar por la muerte de un hijo, no como heredero, sino en virtud de su interés legal en la expectativa de beneficios pecuniarios futuros o potenciales, o en la continuación de la compañía y los servicios de su hijo. Casos de *Franklin* v. *The South Eastern Ry.*, 157 Eng. Rep. 448 y *Dalton* v. *The South Eastern Ry. Co.*, 140 Eng. Rep. 1098, ambos resueltos en el año 1858 y ambos citados y discutidos en 6 Tulane L. Rev. 207, en donde se dice que al interpretar así la ley de Lord Campell, los tribunales miraron al Continente y adoptaron la tesis del Derecho Civil.

En los Estados Unidos la gran mayoría de los Estados aprobaron estatutos similares a la ley de Lord Campbell. (Véanse los estatutos discutidos en 44 Harv. L. Rev. 980.) Uno de ellos fué el enactado por California a través del artículo 377 de su Código de Enjuiciamiento Civil, que es el mismo artículo 61 del nuestro, que dió lugar a la Regla 17 (*k*), idéntica al 377 de California, que correspondía originalmente a la ley de Lord Campbell. 25 Cal. L. Rev. 170. Bajo ese artículo las cortes de California han resuelto que la acción concedida por ese artículo es una causa de acción nueva, distinta a la que hubiera tenido la víctima si hubiese sobrevivido; que es una directa, própia y personal de los reclamantes y no una adquirida en virtud de una trasmisión hereditaria; que .los daños a recobrar son distintos a los

que hubiesen correspondido al occiso, y no forman parte del caudal hereditario del causante; que se trata de un nuevo derecho y no de un remedio en torno a un derecho anterior del "*estate*", de una nueva acción y no de la continuación o sucesión de una anterior acción hereditaria. *Munro* v. *Dredging etc. Co.*, 84 Cal. 515; *Western Metal Supply Co.* v. *Pillsbury*, 172 Cal. 407; *Estate of Riccomi*, 185 Cal. 458; *Marks* v. *Reissinger*, 169 Pac. 243. Es una nueva acción basada en el acto causante de la muerte, tal como afecte a los demandantes y no como haya afectado individualmente al causante. *Secrest* v. *Pacific Electric Ry. Co.*, 141 P.2d 747; *Gregory* v. *Southern Pac. Co.*, 157 Fed. 113. No se trata de una ley de sucesión hereditaria pero de creación de una nueva causa de acción. *Earley* v. *Pacific Electric Ry. Co.*, 176 Cal. 79.

Las cortes de California han interpretado el artículo 377 al efecto de que concede un derecho de acción al padre de un hijo mayor de edad que ha muerto debido a la culpa o negligencia de un demandado, si él demuestra que ha recibido daños pecuniarios, pero no es necesario que esos daños queden establecidos concreta y exactamente. Basta con que se demuestre que el padre tenía un derecho legal a alimentos, y que el padre tenía una esperanza y una expectativa razonable de ayuda pecuniaria en el futuro, de haber continuado el hijo con vida, y es suficiente la relación en sí de padre e hijo, unida al derecho legal y potencial a recibir ayuda pecuniaria. *Hillebrand* v. *Standard Biscuit Co.*, 139 Cal. 233; *Griffey* v. *Pacific Electric Ry. Co.*, 209 Pac. 45. La regla prevaleciente en los Estados Unidos bajo leyes similares a la de Lord Campbell es al mismo efecto, habiéndose establecido que la esencia de los daños y perjuicios consiste en los beneficios prospectivos que el reclamante hubiera tenido de haber la víctima continuado viviendo; que el hecho en sí de existir un derecho a alimentos es suficiente para sostener la acción, aun si esos alimentos no se recibían actualmente al tiempo de la muerte, ya que ese derecho da lugar

a una expectativa o esperanza razonable de beneficios prospectivos, y que la mera relación entre las partes, o cierto grado de parentesco, puede dar lugar a una presunción de que la muerte produce una pérdida de beneficios prospectivos. 25 C.J.S. 1095, sección 26.

Con respecto al término "herederos" usado en el artículo 377 y en nuestra regla 17(k), la Corte Suprema de California, en el caso de *Redfield* v. *Oakland etc. Co.*, 110 Cal. 277, resolvió que al referirse a herederos el artículo 377 no hubo la intención de limitar tal concepto a determinada relación en que una persona, bajo un estatuto, es considerada como la única heredera del occiso, y se resuelve que la palabra "herederos" se ha usado en su acepción general bajo el derecho común y señala a aquellos que son capaces de heredar generalmente, sin referencia a la distribución de bienes hereditarios. Se indica que los daños y perjuicios concedidos a "herederos" no tenían existencia antes de la muerte de la víctima y el derecho a recobrarlos no se basa en la suposición de que ellos fuesen parte del caudal hereditario, ni se ha transferido al demandante bajo las leyes de herencia o de sucesión hereditaria.

En el caso de *Fiske* v. *Wilkie*, 67 C.A.2d 440, 154 P.2d 725, se resuelve que la palabra "herederos" utilizada en el artículo 377, limita el derecho a recobrar daños y perjuicios a una clase de personas que, debido a su relación con el occiso, se presume o se supone que recibirían daños y perjuicios con motivo de la muerte, indicándose que tal reclamación no se refiere a daños y perjuicios sufridos por el occiso, sino por los reclamantes personalmente.

Sin embargo, en el caso de *Jolley* v. *Clemens*, 82 P.2d 51, 62, se resolvió que si había hijos de la víctima de un accidente, el padre no tenía derecho a demandar bajo el artículo 377, y bajo las leyes de sucesión hereditaria. Estamos en desacuerdo con una interpretación tan restrictiva del artículo 377 ya que ella es incompatible con el concepto aceptado por las propias cortes de California en cuanto a que

tal causa de acción no es hereditaria ni forma parte del caudal hereditario. La gran mayoría de las Cortes en los Estados Unidos sostienen la teoría de que se trata de una causa de acción nueva, que no está incluída en el activo de la herencia. 16 Am. Jur. 48. En una anotación en L.R.A. 1916 E, pág. 190, 191, "Statutory Right of parents to recover for death of adult child", se señala un conflicto en la jurisprudencia en cuanto a la inclusión del padre en el término "herederos", pero se indica que bajo estatutos similares al de Lord Campbell, deben estar incluídos dentro de ese término.

### SITUACIÓN EN PUERTO RICO

En California era necesario el aprobar el artículo 377, a los fines de establecer una excepción al principio del Derecho Común, prohibitorio de estas acciones por muerte. Pero en Puerto Rico no era necesario adoptar esa legislación, ni incorporar el artículo 377 del Código de California a nuestro Código de Enjuiciamiento Civil, a través de nuestro artículo 61, ni era necesario el adoptar la regla 17(k) ya que, bajo el artículo 1802 de nuestro Código Civil las acciones por muerte estaban y están autorizadas en forma amplia y general, incluyendo acciones incoadas por parientes y por "herederos". Como hemos indicado, bajo el sistema del Derecho Común, era necesario un estatuto, como excepción a la regla general. Pero Puerto Rico siempre ha estado, en lo sustantivo, bajo el sistema del derecho civil, al amparo del cual se autorizaba la acción por muerte. La técnica del derecho civil es la de incluir una gran variedad de situaciones en los amplios contornos del Código Civil. Por lo tanto, al enactarse aquí el artículo 61 del Código de Enjuiciamiento Civil, y la regla 17(k), lo que se llevó a cabo fué un trasplante artificial e innecesario de disposiciones que ya estaban comprendidas, con amplitud y extensión, en nuestro Código Civil. Especialmente debido a esa realidad, al coexistir la regla 17(k) y el artículo 1802, no po-

demos, ni debemos, llegar a la conclusión de que la regla 17(*k*) limita el alcance del artículo 1802. *Orta* v. *P. R. Railway, Lt. & P. Co.*, supra; Cf. Colombo, ob. cit., pág. 727, et seq. Por el contrario, interpretando ambos preceptos conjuntamente, como si fueran "*in pari materia*" (25 C.J.S. 1085), ambos deben ser interpretados liberalmente, en forma contraria a la regla restrictiva del derecho común, en tal forma que la especialidad de la regla 17(*k*) debe quedar subordinada a la generalidad y amplitud del artículo 1802. Comprendemos que podría ser indeseable e injusto el permitir una multiplicidad de reclamaciones contra una persona en virtud de un solo acto torticero. Pero, de un lado, tal resultado está permitido por el artículo 1802, que debemos observar y acatar, y, de otro lado, no debe haber daño sin remedio.

▬▬▬ Refiriéndonos ahora al caso de autos, bajo el artículo 1802, el padre, interventor-apelante, está autorizado a demandar al alegado causante de la muerte de su hijo, aun existiendo una hija natural reconocida, ya que la relación de padre e hijo es tal, que el padre, con la muerte de su hijo, pierde su derecho a alimentos, consagrado por el artículo 143 de nuestro Código Civil. Aun si el padre no recibía alimentos en forma real y efectiva al tiempo de la muerte de su hijo, él pierde los beneficios prospectivos y potenciales inherentes a la relación de padre e hijo. La relación en sí daba lugar a una esperanza razonable de alimentos y beneficios futuros. Tal como se indica en Colombo, ob. cit., pág. 733, nota 1047:

"La vida humana es un bien jurídico, un valor económico como cualquier otro, más digno de protección que ninguno, un capital social destinado a ser, en el futuro, fuente de beneficios, sobre todo en los hogares modestos, y los padres, al perder a sus hijos sufren la pérdida de los gastos y sacrificios, traducibles pecuniariamente, que han realizado para sostener la vida, a la vez que la fundada esperanza de una protección o un amparo para la vejez."

Hemos hablado de valores económicos en cuanto a la pérdida de la vida de un hijo. Pero no ignoramos que la vida de un hijo, desde el punto de vista del afecto y del cariño, tiene un valor inconmensurable que no se presta a valoración objetiva. El juzgador debe considerar todos esos elementos para que aquilate los daños y perjuicios, incluyendo sufrimientos mentales causados al padre. *Maldonado* v. *Porto Rico Drug Co.*, 31 D.P.R. 747; *Orta* v. *P. R. Railway, Lt. & P. Co.*, supra, a la pág. 750.

Ya hemos visto que aun bajo la regla 17(*k*), el padre puede reclamar válidamente en el caso de autos, no obstante la existencia de una hija natural reconocida, especialmente al interpretar esa regla a la luz del artículo 1802. Pero es innecesario el que basemos nuestra opinión en tal regla. Es claro, a nuestro juicio, que es aplicable a este caso el artículo 1802 de nuestro Código Civil.

*Debe revocarse la sentencia apelada y devolverse el caso al tribunal a quo para que se sigan aquellos procedimientos que no sean incompatibles con esta opinión.*

El Juez Asociado Sr. Sifre concurre con el resultado.