Ozzie CLAY, et al., Plaintiffs,

v.

**BROWN, HOPKINS & STAMBAUGH, et al., Defendants.**

Civ. A. No. 93–0695.

United States District Court, District of Columbia.

July 21, 1995.

**12**

Martin Francis McMahon, Anne T. Taylor, Washington, DC, for plaintiffs.

John T. Coyne, Patrick J. Murphy, Jordan, Coyne & Savits, Washington, DC, Michael Edward Reheuser, Jordan, Coyne & Savits, Fairfax, VA, for defendant Brown, Hopkins & Stambaugh.

David Patrick Durbin, Patrick J. Murphy, Jordan, Coyne & Savits, Washington, DC, Michael Edward Reheuser, Jordan, Coyne & Savits, Fairfax, VA, for defendants Christopher Hopkins, Blair Brown and Gregory L. Stambaugh.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on an emergency motion filed by Plaintiffs pursuant to 28 U.S.C. § 636(c)(6) to remove Magistrate Judge Robinson due to her alleged bias.

On April 6, 1993, Plaintiffs filed an attorney malpractice action alleging that Defendant, while acting as Plaintiffs' counsel, failed to file an answer in a fraudulent conveyance case filed against them. As a result, Plaintiffs allege they suffered some $1 million in damages.[1] On April 24, 1995, the parties consented to this Court's referring the case to Magistrate Judge Robinson for all purposes, including trial.

Prior to the scheduled trial date before Magistrate Judge Robinson, Defendants filed a motion that Plaintiffs should be collaterally estopped from denying that Clay Properties, Inc. was the *alter ego* of Ozzie Clay "as of 1983 when the purported sales transaction occurred." (Plaintiffs' Motion, at 6 (quoting from Defendants' Memorandum accompanying their Motion *In Limine* )). On June 14, 1995, Magistrate Judge Robinson held that Clay Properties, Inc. and Ozzie Clay were

*alter egos* from 1983 through 1995. On June 15, 1995, Plaintiffs made an oral Motion For Reconsideration And/Or Clarification of The Court's Ruling Of June 14, 1995 which the Court denied. On June 19, 1995, Plaintiff filed a written motion for reconsideration or clarification of the June 14, 1995 Order.

On June 26, 1995, Plaintiffs filed an "emergency application" with this Court for the removal of Magistrate Judge Robinson for bias pursuant to 28 U.S.C. § 636(c)(6) on the basis of her adverse rulings in this case: "There have been a number of rulings made by Magistrate Robinson that could be interpreted as collective bias against the Plaintiffs." (Plaintiffs' Motion, at 8). Plaintiffs allege that the following rulings of Magistrate Judge Robinson, taken together, establish bias against the Plaintiffs:

(1) Defendants were given eleven additional years of collateral estoppel. According to Plaintiffs, even though Defendants only asked for collateral estoppel relief for the year of 1983, Magistrate Judge Robinson impermissibly granted relief from 1983 through 1995.

(2) Magistrate Judge Robinson granted Defendants' motion for postponement of the trial over Plaintiffs' objection.

(3) Magistrate Judge Robinson excluded from trial evidence copies of "vital corporate documents from 1983 (the very proof that would establish lack of an '*alter ego* ' relationship) when the only sworn recital before her was that of Plaintiff Ozzie Clay." (Plaintiffs' Motion, at 9).

## ANALYSIS & DECISION

■ Plaintiffs argue that 28 U.S.C. § 636(c)(6) gives this Court the authority to remove a magistrate judge for bias. Title 28 U.S.C. § 636(c)(6) provides: "The court may, for good cause shown on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate under this subsection." Plaintiffs contend that the bias and prejudice of Magistrate Judge Robinson, as evidenced

---

1. Plaintiffs also ask for punitive damages.

by her judicial rulings, constitute "extraordinary circumstances" under § 636(c)(6).

■ This Court rejects the means by which Plaintiffs have challenged Magistrate Judge Robinson's impartiality. The more appropriate procedure for challenging the impartiality of a judge is through a motion for recusal pursuant to 28 U.S.C. § 455.[2] The case law interpreting this provision requires that the movant first present a motion for recusal to the judge whose impartiality is at issue. In *United States v. Heldt*, 668 F.2d 1238 (D.C.Cir.), *cert. denied* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1981), the court held that § 455 "imposes a duty directly upon the judge to evaluate his own conduct." *Id.* at 1271. In *Kinnear–Weed Corp. v. Humble Oil & Refining Co.*, 441 F.2d 631 (5th Cir.1971), the court held that "Congress made it expressly plain that it placed in the justice or judge the responsibility for making the determination 'in his opinion' that he should disqualify himself." *Id.* at 635. In *In re School Asbestos Litigation*, 977 F.2d 764 (3rd Cir.1992), the court held that § 455 is "addressed directly to judicial officers, requiring them to act *sua sponte* when confronted with situations requiring their disqualification." *Id.* at 775. *See also Roberts v. Bailar*, 625 F.2d 125 (6th Cir.1980).

In the instant case, the relationship of the magistrate judge to the district judge closely resembles that of a district judge to an appellate court. When a judge is not permitted in the first instance to review a motion for his or her dismissal from a case, "the district judge is given no notice of the charges against him, nor is he given any opportunity to explain his actions. The district judge has no part in preparing the designated record that provides the basis for appellate review. The charges appear in the briefs of the litigants. Consequently, the record as to the charges against the judge is compiled solely by disgruntled litigants who have no concern for the interests of the judge or the appearance of justice." *United States v. Jacobs*, 855 F.2d 652, 657 (9th Cir.1988) (Stevens, D.J. concurring in part, dissenting in part).

■ In the instant case, Plaintiffs have made allegations against Magistrate Judge Robinson without first affording her the opportunity to respond. Fundamental principles of due process require that the judge being accused of bias be given an opportunity to respond. Where litigants have attempted to bypass the trier of fact and in the first instance have sought to raise the issue of bias before an appellate court, they have generally been rebuffed. *See United States v. Conforte*, 624 F.2d 869, 879 (9th Cir.), *cert. denied* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980); *United States v. Foddrell*, 523 F.2d 86, 87 n. 2 (2nd Cir.), *cert. denied* 423 U.S. 950, 96 S.Ct. 370, 46 L.Ed.2d 286 (1975); *Delesdernier v. Porterie*, 666 F.2d 116, 121 (5th Cir.), *cert. denied* 459 U.S. 839, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982).

In *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287 (D.C.Cir.1988), this circuit held that: "Recusal is a highly personal decision. The judge must assess the truth of the facts alleged and determine if they would impeach his impartiality or appearance of impartiality.... This is not a decision that an appellate panel may make for a district court judge in the first instance." *Id.* at 1301. And in *Jenkins v. Sterlacci*, 849 F.2d 627 (D.C.Cir.1988), the court held that a special master must have the opportunity to confront and consider, in the first instance, a motion to disqualify for bias. *Id.* at 631–32.

■ This Court will not sanction the use of 28 U.S.C. § 636(c)(6) as a back-door method of raising the functional equivalent of a 28 U.S.C. § 455 motion. It is fundamentally unfair for a review court to consider a claim of bias before the judge whose impartiality is under attack has been presented with the opportunity to rule on the question.

In bypassing Magistrate Judge Robinson, Plaintiffs have provided no factual basis for their allegations of bias. They are, in effect, requesting this Court in its review capacity to make findings of fact on untested allegations without having the benefit of the trial tribunal's findings.

**2.** Title 28 U.S.C. § 455(a) provides that "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

Because Plaintiffs are dissatisfied with the magistrate judge's rulings, they are attempting in an impermissible way to use § 636(c)(6) to overrule the magistrate judge.[3] A party should not be able to use unverified and unsubstantiated allegations as a way to have a magistrate judge's legal and factual rulings overturned. Plaintiffs must use the proper procedures to obtain such review. As the learned United States District Judge Weinstein observed: "The recusal statutes were not to be abused by parties making motions for tactical reasons which would result in wasted judicial resources." Jack B. Weinstein, *The Limited Power of the Federal Courts of Appeals to Order a Case Reassigned to Another District Judge*, 120 F.R.D. 267, 281 (1988).

The Court of Appeals' decision in the recent *Microsoft* case lends some support to Plaintiffs' motion. In that case, the Court of Appeals entertained a motion to recuse the trial judge without requiring the movant to first present the matter to the District Court.[4] The Court of Appeals entertained the motion and removed the judge from the case, even though it did not have the benefit of the trial court's position and even though it noted that the party who sought to recuse the judge below had dubious standing to appeal.[5] In its decision, the Court of Appeals did not cite *Liberty Lobby* or attempt in any way to discuss whether a reviewing court should first seek the views of the court below where a recusal motion has not been presented to the court below in the first instance. Instead, the Court of Appeals proceeded to make findings of fact based essentially on the naked allegations of the defendant in its motion.

This Court is left in the quandary of determining what is the relevant precedent to be followed in this case. Is it *Liberty Lobby* or *Microsoft?* Clearly, the two decisions are in conflict. Since *Liberty Lobby* specifically addressed the issue when a reviewing court should consider a motion for recusal presented directly to it, and the *Microsoft* court did not, this Court believes that *Liberty Lobby* is controlling and will follow it.[6]

*Liteky v. United States*, —— U.S. ——, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) affords an

---

3. Plaintiffs argue that Magistrate Judge Robinson abused her discretion by making erroneous findings of fact. *See* Plaintiffs' Motion at 13. Plaintiffs' arguments of Magistrate Judge Robinson's error have been offered only in support of Plaintiffs' allegations of the magistrate judge's bias. For the reasons stated, Plaintiffs must first present such allegations before the magistrate judge under 28 U.S.C. § 455.

4. The District Court in the *Microsoft* case is the author of this opinion. The Appeals Court in *Microsoft* did not refer to the trial court's request to address the claims made against it if the Appeals Court was going to entertain the recusal request. In the District Court's order of March 14, 1995, the District Court wrote:

The Court will not address Microsoft's recusal motion filed in the first instance before the Court of Appeals. It would seem incumbent on the party seeking such extraordinary relief to present such a motion to the trial court so at the least the court can set the record straight and correct those accusations that are unverified and unsubstantiated.

5. Only Microsoft raised the recusal issue. The *Microsoft* panel accepted jurisdiction of the government's appeal under 28 U.S.C. 1292(a)(1). *See Carson v. American Brands*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981). It allowed Microsoft to piggy-back on the government's appeal. The panel noted that if Microsoft alone had appealed, the Court would not have had jurisdiction to hear its appeal. *See United States v. Microsoft*, 56 F.3d 1448, 1456–57 (D.C.Cir. 1995). It should be noted that while certain amici were allowed to be heard, there was no representation of the District Court on the bias motion.

6. There is nothing in the *Microsoft* opinion that would indicate the panel intended to overrule Judge Bork's well reasoned opinion in *Liberty Lobby*. Indeed, the court did not discuss *Liberty Lobby* nor even cite it. The Court of Appeals in *Microsoft* bypassed the traditional recusal process and anchored its decision on 28 U.S.C. § 2106. This provision directed at the administrative assignment of judges and cases was not intended and cannot be allowed to trump the fundamental concepts of due process. Continued use of this northwest passage around 28 U.S.C. § 455 may at some point seriously affect the independence of this nation's lower court tribunals. *See infra*, at n. 7. "One of the great strengths of the federal judicial system has been the strong sense of independent power and responsibility of each federal judge to protect the Constitution and laws of the United States. Any unnecessary erosion of this vital legal resource can only be deprecated and viewed with alarm." Jack B. Weinstein, *The Limited Power of the Federal Courts of Appeals to Order a Case Reassigned to Another District Judge*, 120 F.R.D. 267, 285 (1988).

additional reason for denying Plaintiffs' claim. The Court stated that "judicial rulings alone almost never constitute valid basis for a bias or partiality motion." *Id.* at ——, 114 S.Ct. at 1157. In addition, judicial remarks that are critical or hostile to counsel, the parties, or their cases do not support a bias challenge. *Id.* at ——, 114 S.Ct. at 1157. And as Judge Frank said in *In re J.P. Linahan, Inc.,* 138 F.2d 650, 654 (2d Cir. 1943), "If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." Plaintiffs' attack on Magistrate Judge Robinson, based solely on her legal rulings, clearly falls within the holding of *Liteky.*

An accusation of bias against a judge is a serious allegation. It should not be made lightly nor should a reviewing court treat it so. And this Court will not make such a finding without a record that has been properly developed and tested. A judge under a "bias attack" must be given the opportunity to respond. Such charges, if not refuted, can substantially undermine the effectiveness of a judge who, in order to discharge the judicial office, must be deemed fair and impartial.[7] Fundamental fairness dictates that judges, just like other citizens, be given the opportunity to respond to allegations attacking the very essence of the way they perform their duties.

We as judges take great pains to afford every litigant due process of law. Indeed, in actions brought by *pro se* plaintiffs or by prisoners under habeas corpus and 28 U.S.C. § 2255, the judicial system leans over backward to afford them every opportunity to be heard. *See Fox v. Strickland,* 837 F.2d 507 (D.C.Cir.1988) (holding that it is incumbent on courts to inform *pro se* plaintiffs of the pendency of motions against them and to explain to them the consequences of failing to respond). Our front-line judges are entitled to no less consideration. Due process of law does not stop at chamber's door.

For the reasons stated, this Court denies Plaintiffs' motion challenging the impartiality of Magistrate Judge Robinson through the vehicle of the "extraordinary circumstances" language of 28 U.S.C. § 636(c)(6).

An appropriate order accompanies this memorandum opinion.

### ORDER

This matter comes before the Court as an emergency motion filed by Plaintiffs pursuant to 28 U.S.C. § 636(c)(6) to remove Magistrate Judge Robinson due to "extraordinary circumstances," i.e., legal rulings that Plaintiffs allege are evidence of Magistrate Judge Robinson's bias.

Based on the foregoing opinion, the Court hereby **ORDERS** that Plaintiffs' motion for the removal of Magistrate Robinson pursuant to 28 U.S.C. § 636(c)(6) be **DENIED.**

---

7. The ability of trial judges to discharge their office should not be chilled by the threat of being removed from a case without having any opportunity to respond to spurious charges against them. As Justice Black in his dissenting opinion in *Chandler v. Judicial Council,* 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970), observed:

> The wise authors of our constitution provided for judicial independence because they were familiar with history; they knew that judges of the past—good, patriotic judges—had occasionally lost not only their offices but had also sometimes lost their freedom and their heads because of the actions and decrees of other judges. They were determined that no such things should happen here.

*Chandler,* at 143, 90 S.Ct. at 1683 (Black, J. dissenting).