# 2001 DTA 155

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL V DE PONCE/AIBONITO**

*IN RE*: HON. ELIADIS ORSINI ZAYAS
*EX PARTE*

Núm. KLCE-01-00226

San Juan, Puerto Rico, a 23 de abril de 2001

Panel sustituto integrado por su Presidente, el Juez Brau Ramírez,
la Juez Ramos Buonomo y la Juez Pabón Charneco

Pabón Charneco, Jueza Ponente

 ʼʼ

## TEXTO COMPLETO DE LA SENTENCIA

La Lcda. Noemí Beltrán Soto solicita la revisión de una determinación emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante dicho dictamen, el foro de instancia denegó una Petición de Recusación instada por ésta en contra de la Jueza Eliadís Orsini Zayas.

Por las razones que expondremos a continuación, expedimos el auto y confirmamos la resolución recurrida.

### I

Según surge del recurso presentado, el 31 de octubre de 2000, la Lcda. Noemí Beltrán Soto, en adelante Lcda. Beltrán, presentó una Petición de Recusación *Ex-parte* solicitando que los casos que tenía en la sala de la Jueza Eliadís Orsini Zayas, en adelante Jueza Orsini, fueran trasladados a otras salas. Asimismo, requirió que se ordenara a la Secretaría del Tribunal, que en lo sucesivo no asignara sus casos a la sala de la Jueza Orsini.

El 1 de noviembre de 2000, el Juez Administrador, Hon. Wilfredo Santos López, emitió una Orden asignándole al Hon. Edison Sanabria Pérez el caso de autos. El 8 de noviembre de 2000, dicho magistrado emitió una Orden concediéndole término a la Jueza Orsini para que expusiera su posición.

El 13 de noviembre de 2000, la Jueza Orsini presentó su escrito. No conforme con la relación de hechos que presentó la Jueza Orsini, la Lcda. Beltrán solicitó para replicar al mismo. Asimismo, la Lcda. Beltrán sometió una moción solicitando la paralización de los casos a una de las partes. Se alega que dicha moción nunca fue

resuelta por el Juez Administrador. El 14 de diciembre de 2000, la Lcda. Beltrán presentó su réplica.

Así las cosas, el 17 de enero de 2001, notificada el 19 de enero de 2001, el Juez Sanabria Pérez denegó la Petición de Recusación.

Inconforme con dicha determinación, la Lcda. Beltrán acude a este Tribunal el 20 de febrero de 2001.

Procedemos según intimado.

## II

En su recurso, la Lcda. Beltrán plantea que incidió el tribunal de instancia al solicitar y conceder término a la Jueza Orsini para que expusiera su posición en torno a la Petición de Recusación presentada; al omitir el análisis de los documentos que le fueron sometidos por la Lcda. Beltrán en su *"Réplica a Comparecencia Especial"*; al tomar de las grabaciones de las vistas que escuchó, sólo aquellas partes que beneficiaban las decisiones de la Jueza Orsini, lo que le llevó a emitir un juicio prejuiciado y parcializado del caso; y al avalar las actuaciones de la Jueza Orsini en su determinación de notificar sus escritos a otras personas que no eran parte del caso por ser uno de naturaleza *ex-parte.*

## III

En Puerto Rico, el procedimiento disponible de inhibición de los jueces está regulado por las Reglas 63.1, 63.2 y 63.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 63.1 y 63.3. *Departamento de la Familia v. Soto,* 147 D.P.R. __ (1999), **99 J.T.S. 21**.

La Regla 63.1 dispone, en lo pertinente:

*"A iniciativa propia, o a recusación de parte, un juez deberá inhibirse de actuar en un pleito o procedimiento en cualquiera de los casos siguientes:*

*(a) Por estar interesado en su resultado o tener prejuicio o parcialidad personal hacia cualquiera de las partes o sus abogados.*

*(b) Por existir parentesco de consaguinidad o afinidad con cualquiera de las partes o de sus abogados dentro del cuarto grado.*

*(c) Por haber sido abogado o de cualquiera de las partes o sus abogados en el pleito pendiente ante él, o fiscal en una investigación o proceso criminal donde los hechos fueren los mismos que habrían de ser sometidos a su resolución.*

*(d) Por existir una relación de amistad de tal naturaleza entre el juez y cualquiera de las partes o sus abogados que pueda frustar los fines de la justicia.*

*e) Por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia."*

Surge de dicho precepto legal que la inhibición puede ocurrir de dos (2) maneras: 1) a iniciativa del juez, o 2) a petición de parte por recusación. Si la inhibición es por recusación, ésta se promueve mediante la moción de inhibición. Hernández Colón, *Derecho Procesal Civil,* Michie, 1997, a la pág. 213.

A su vez, la Regla 63.2, *supra,* reza:

*"Cualquier recusación deberá ser jurada y expondrá los hechos en que se funda. Dicha recusación deberá*

*ser presentada tan pronto el solicitante advenga en conocimiento de la causa de recusación."*

Por su parte, la Regla 63.3 *supra*, dispone:

*"Presentada y notificada la solicitud a que se refiere la Regla 63.2, se designará otro juez para que resuelva la misma."*

Una lectura.de las disposiciones arriba transcritas revela de manera meridiana que el mecanismo indicado para presentar una petición de recusación es mediante la presentación de una declaración jurada dentro del mismo pleito en el que se interesa la descalificación de un juez. Dicha petición de recusación, a su vez, deberá presentarse tan pronto la parte que la solicita advenga en conocimiento de los hechos que justifican tal proceder. *Departamento de la Familia v. Soto, supra.* Dicha declaración jurada deberá contener una relación de esos hechos y tendrá que ser jurada.

La Regla 63.1, *supra*, es similar a las normas vigentes en la jurisdicción federal. Véase, 28 U.S.C. secs. 144, 455; Wright, Miller & Cooper, *Federal Procedure*, Vol. 13-A, West Publishing Co. St. Paul, Minn., 1984, a las págs. 548 y ss. De hecho, nuestra Regla es producto de la adopción de leyes y doctrinas federales. José E. Mendoza Vidal, *Apuntes sobre el prejuicio y la parcialidad como fundamento para la recusación de un juez en el sistema de derecho de Puerto Rico*, 56 Rev. Jur. U.P.R. 465, 468-69 (1987).

Por otro lado, en *Santiago v. Superintendente*, 112 D.P.R. 205, 215 (1982), el Tribunal Supremo de Puerto Rico expresó:

*"El vocablo prejuicio, en su prístina acepción significa "acción y efecto de prejuzgar". Este verbo, a su vez, implica "juzgar las cosas antes de tiempo oportuno, o sin tener de ellas conocimiento cabal". Prejuiciado es quien "tiene prejuicio de antemano". Se admite, pues, que en el sentido peyorativo, prejuicio denota "parcialidad" o falta de neutralidad judicial. Más allá de su aspecto negativo, en sus variadas definiciones idiomáticas y valor semántico, denota "juicio previo", "juicio anticipado" o "juicio a destiempo".*

Sabido es que la imputación de parcialidad o prejuicio, como punta de lanza para obtener la inhibición o recusación de un juez, debe cimentarse en cuestiones personales\ serias, no triviales, ni judiciales; es decir, una actitud originada extrajudicialmente en situaciones que revistan sustancialidad. *Ruiz Rivera v. Pepsico*, 148 D.P. R. __ (1999); **99 J.T.S. 95**; *Nudelman v. Ferrer*, 107 D.P.R. 495 (1978); *Pueblo v. Maldonado*, 96 D.P.R. 897 (1969). Esta también es la norma en el ámbito federal. *Liteky v. United States*, 510 U.S. 540, 114 S. Ct. 1147 (1994). A tales efectos, se ha señalado:

*"'Personal' is in contrast with judicial; it characterizes an attitude of extra-judicial origin, derived non coram judice. 'Personal' characterizes clearly the prejudgment guarded against. It is the significant word of the statute."* Wright, Miller and Cooper, *supra*, a la pág. 557, citando a *Craven v. U.S., C.C.A.*, 1st., 1917, 22 F.2d 605, 607-608."

En casos de inhibición de jueces, tal prejuicio o parcialidad debe ser personal y no judicial. Prejuicio personal significa una actitud extra-judicial en su origen y el hecho de que el juez ha intervenido en casos anteriores distintos, no es suficiente para demostrar ese prejuicio personal. *Lyons v. United States*, 325 F.2d 370, 376 (9th Cir. 1963), *certiorari* denied 377 U.S. 969 (1964); *Pueblo v. Maldonado*, 96 D.P.R. 897, 910 (1969).

Así, por ejemplo, se reconoce que no constituye fundamento para solicitar la recusación de un juez, el que éste tenga una opinión definida en cuanto al derecho aplicable en el caso. *Southern Pacific Communications v. A.T.&T.*, 740 F. 2d 980, 990-991 (D.C.Cir. 1984).

La incomodidad personal que pueda sentir un abogado no es suficiente para forzar una inhibición, contra el respetable criterio y discreción de la juez. *Ruiz Rivera v. Pepsico de Puerto Rico, supra*, a la pág. 1157. La existencia de parcialidad o prejuicio ha de determinarse a la luz de la totalidad de las circunstancias, desde la perspectiva de la mítica figura del buen padre de familia. José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, **Publicaciones J.T.S.**, 2000, T. II, a las págs. 1126-1128.

A nivel federal, se utiliza un estándar objetivo al evaluar una petición de recusación de un juez si una persona razonable en conocimiento de todas las circunstancias, tendría dudas sobre la imparcialidad de un juez. *United States v. Greenough*, 782 F. 2d 1556, 1558 (11th. Cir. 1986).

Por otro lado, aunque una parte tiene derecho a que su causa sea dilucidada por un juzgador imparcial, no existe derecho alguno a tener un juez de su preferencia, ni de otro modo el estatuto persigue conceder un derecho de veto a las partes sobre la identidad del juez que preside en su causa. Se ha indicado:

*"The federal statutes give no litigant a veto power over the judge by whom it will be heard."* Wright, Miller and Cooper, *supra*, a la pág. 553.

Asimismo, la mera existencia de fricción entre el juez y una parte o de manifestaciones del primero criticando al segundo, de ordinario es insuficiente, por sí sola, para requerir la recusación del juez. *People Helpers Foundation Inc. v. City of Richmond, Va.*, 12 F. 3d 1321 (4th Cir 1993).

Reiteradamente se ha reconocido que el derecho provisto por ley para recusar a un Juez no debe ser instrumento para causar demoras innecesarias, ni para entorpecer los procedimientos de un juicio, pues de otra manera lo que debería ser una sabia norma para garantizar justicia e imparcialidad, se convertiría en una estrategia dilatoria para los abogados o las partes. *Pueblo v. Pacheco*, 83 D.P.R. 285 (1961).

Procesalmente, el tribunal puede permitir que las declaraciones juradas se cumplimenten o se impugnen mediante deposiciones o declaraciones juradas adicionales. En caso de verdadera justa causa, también puede permitirse el uso de ciertos mecanismos de descubrimiento de prueba. Un abogado no puede arbitrariamente decidir que no desea que determinado juez juzgue un caso específico. Véase, Cuevas Segarra, *supra*, a la pág. 1136. Las alegaciones de parcialidad requieren prueba. *Rivera v. Corte*, 71 D.P.R. 953, 962-963 (1950). Estas alegaciones deben cumplir con el requisito de preponderancia de la prueba. Imputarle a un juez prejuicio, pasión o parcialidad, sin sustanciarlo o sin motivos fundados para así creerlo, constituye conducta censurable. Cuevas Segarra, *supra*, a la pág. 1136.

La petición de recusación debe ser notiticada a las demás partes y al juez del cual se solicita la recusación, a fin de que este tenga la oportunidad -de así desearlo- de comparecer y rebatir lo que se le imputa. Cuevas Segarra, *supra*, a la pág. 435.

En *Clay v. Brown, Hopkins, & Staumberger*, 892 F. Supp. 11 (1995), la Corte de Distrito federal para el Distrito de Columbia tuvo la oportunidad de atender una situación similar a la de autos. En ese caso, la parte demandante solicitó la recusación del juez que atendía el caso de impericia que se había presentado. No obstante, dicha solicitud se presentó como un caso separado al de impericia. El Tribunal de Distrito denegó la solicitud y expresó:

*"...fundamental principles of due process require that the judge being accused of bias be given an opportunity to respond."*

Más adelante añadió:

*"A judge under a "bias attack" must be given the opportunity to respond. Such charges, if not refuted, can*

*substantially undermine the effectiveness of a judge who, in order to discharge the judicial office, must be deemed fair and impartial. Fundamental fair dictates that judges, just like other citizens, be given the opportunity to respond to allegations attacking the very essence of the way they perform their duties."*

En conclusión, la Regla 63 tutela un interés de trascendental importancia en nuestros días: la confianza del pueblo en los tribunales llamados a impartir justicia. Cuevas Segarra, *supra*, a la pág. 1127. La recusación de un Juez es algo que está revestido de gran interés público, por cuanto la fe y la confianza de nuestro sistema de justicia dependen en gran medida de la confianza que se tenga sobre aquellos encargados de impartir justicia.

## IV

Procedamos analizar la controversia ante nos a la luz de la normativa reseñada. Este Tribunal, [1] en ocasiones anteriores, ha manifestado que en nuestra jurisdicción no existe una acción civil separada para obtener la recusación de un juez en todos los pleitos en que un abogado(a) en particular ostente la representación legal de alguna de las partes litigantes en dichos casos. Menos aún, si lo que se pretende es obtener la recusación de un juez mediante un procedimiento *ex parte*, no contencioso, en el cual ni el propio juez recusado, ni las partes adversas que pudieran quedar afectados por su descalificación, tendrían oportunidad de participar de modo alguno. Concurrimos con esta posición.

En el caso de autos, el Tribunal de Primera Instancia debió haber desestimado de plano la Petición de Inhibición de la Lcda. Beltrán, toda vez que no está acorde a la Regla 63 de las de Procedimiento Civil, *supra*. Un procedimiento *ex parte*, no contencioso, no es el vehículo procesal apropiado para el proceso de impugnación de un juez o jueza.

Por otro lado, el recurso utilizado por la Lcda. Beltrán pretendía que se descalificara a la Jueza Orsini de todos casos futuros que tuviera ante la Jueza. Esta descalificación general en la jurisdicción federal se denomina *"blanket disqualification"* o *"across the board disqualification"* y los tribunales no han alentado su uso. De hecho, cuando los tribunales han encontrado que el uso de un *"blanket challenge"* constituye un peligro sustancial a la dignidad e independencia de la rama judicial, han prohibido dicha práctica, aun cuando la misma estuviera expresamente autorizada por ley. Véase Richard E. Flamm, *Judicial Disqualification: Recusal and Disqualification of Judges*, Little, Brown and Company, 1996, págs. 67-68. En nuestro ordenamiento jurídico no existe disposición sobre el particular.

Este Tribunal pasará juicio sobre la Petición de Inhibición, toda vez que el foro de instancia, siguiendo un proceso anómalo, consideró la misma, recibió prueba, la cual incluyó la posición de la Jueza Orsini conforme principios fundamentales de debido proceso de ley y emitió un dictamen.

Previo a discutir los errores 2, 3 y 4 señalados por la Lcda. Beltrán, entendemos necesario entrar a fondo a discutir la Petición de Inhibición y lo expresado en la misma, toda vez que esta información nos llevará a realizar un análisis completo.

En su petición, la Lcda. Beltrán expone que por primera vez desde que comenzó a ejercer como abogada siente frustración por la forma en que ha sido tratada por un Juez de nuestro sistema judicial. Alega que la situación es una que le provoca malestar, incomodidad e incluso aprehensión al entrar a la sala de la Jueza Orsini. Plantea que esta situación no sólo afecta su desempeño como abogada, sino que está afectando los intereses y derechos de sus representados. Asimismo, indica que siente y considera que no importa lo que haga ó solicite, la Jueza Orsini deniega dichas peticiones, aun cuando la razón o el derecho estén de su parte. Esta situación provoca que tenga que recurrir a este Tribunal, lo que conlleva gastos para sus clientes y para ella. Nos indica que, aun cuando este Tribunal ha confirmado sus actuaciones, la Jueza toma el asunto personal, lo cual denota en su trato hacia ella. A fin de sustentar su posición, relata algunos incidentes acaecidos. Citamos *ad verbatim* lo planteado por la Lcda. Beltrán en su recurso y que evaluó el Juez Sanabria:

"*Gil Segarra v. Alvárez- JAC1995-0426- Este caso estuvo ante la consideración de otros Jueces que en algún momento estuvieron en la Sala 602 y el mismo estuvo paralizado desde el 7 de agosto de 1996 debido a que nuestro representado presentó una petición en el Tribunal de Quiebras. Luego el caso en el Tribunal de Quiebras fue desestimado el 18 de mayo de 1999 y el 18 de junio de 1999 solicitamos la reanudación de los procedimientos en el caso de División de Bienes Gananciales. Es a partir de ese momento que la Juez Orsini comienza su intervención en este caso. En respuesta a nuestra solicitud de reanudación de los procedimientos, la Jueza Orsini señala una vista para el 25 de octubre de 1999 para pautar los procedimientos a seguir. En dicha fecha, la Jueza Orsini dictó una serie de órdenes a las partes. Con posterioridad, radicamos una Moción Informativa y Solicitud de Remedios, donde le explicamos al tribunal que para poder cumplir con sus órdenes necesitábamos [sic] obtener información de Ponce Auto Services, Inc. que es de los bienes a liquidar. En nuestra próxima comparecencia ante la Juez el día 17 de diciembre de 1999, ésta sin atender a nuestra solicitud y nuestros fundamentos, nos dijo en actitud molesta que esta [sic] abogada se estaba autorelevando de cumplir con la orden del tribunal. Ante nuestra insistencia de la necesidad de una auditoría del negocio, otra vez la Juez en tono sarcástico nos preguntó si somos contable. Cabe señalar que nunca logramos que se nos permitiera hacer la auditoría, lo cual entendemos que es un derecho de nuestro representado. Posteriormente radicamos otra moción solicitando remedios y sanciones debido a que la otra parte no estaba cumpliendo con los acuerdos. El 8 de marzo de 2000, debido a que llegamos a unos acuerdos con el otro abogado, desistimos de nuestra moción en corte abierta. Así las cosas, otra vez la parte demandada incumplió una serie de acuerdos -los del día 8 de marzo de 2000-, por lo que volvimos a radicar una moción. La parte demandada objetó a lo cual replicamos y solicitamos una vista para discutir los asuntos planteados. La Jueza Orsini declaró No Ha Lugar nuestra moción ignorando nuestra solicitud de una vista. Desde el 8 de marzo de 2000 se seleccionó -por acuerdo de las partes-, un Contador Público Autorizado para que valore el negocio en marcha. El 9 de agosto de 2000, el CPA nos indicó mediante carta que no podía realizar su trabajo debido a que la Sra. Carmen Alvarez no le había suplido una serie de documentos solicitados por él para poder cumplir su encomienda. Previamente habíamos radicado una moción informativa al tribunal, a lo cual la Jueza Orsini señaló una vista para el 6 de noviembre de 2000 y recordó a las partes sobre el incumplimiento en relación con el CPA seleccionado. Procedimos a ordenar al tribunal que el CPA estaba impedido de realizar su trabajo debido al incumplimiento de la Sra. Carmen Alvarez. La Jueza Orsini, en vez de dictar una ORDEN concediéndole un término perentorio para cumplir, se limitó a emitir una advertencia leniente dirigida a la demandada. No tenemos duda de que el trato a nuestro representado hubiere sido totalmente diferente. Todas estas situaciones nos llevan forzosamente a concluir que la Jueza Orsini está parcializada o prejuiciada en el citado caso.*

*Francisco Vélez Díaz v. Ponce Auto Services, Inc. (Demandados) v. Gil Segarra Esquivel, et als. (Terceros Demandados) JAC1998-0091- En este caso, el señor Segarra se quedó sin representación legal y nos solicitó que asumiéramos su representación. Esto ocurrió luego del fallecimiento de su abogado, Lcdo. Manuel Rosario. En esa occasión le aconsejamos que se buscara otro abogado, en vista de que esta abogada estaba confrontando problemas en la sala de la Jueza Orsini y no queríamos perjudicar su caso. Así las cosas, para el mes de agosto del año en curso, el Señor Segarra nos indicó que había consultado otros abogados, pero que ninguno había aceptado representarle y que la Jueza Orsini le había dado un término para comparecer mediante abogado. Ante esas circunstancias, aceptamos la encomienda y luego de escuchar al Señor Segarra y analizar el expediente del caso, procedimos a radicar la moción asumiendo representación legal.*

*Luego procedimos a radicar una moción sobre relevo de sentencia al amparo de la Regla 49.2, en descargo de nuestra responsabilidad profesional por entender que los derechos de nuestro representado fueron lesionados. La Sentencia Sumaria Parcial dictada por la Jueza Orsini desestima la demanda a favor de la Sra. Carmen Alvarez exclusivamente. Dicha moción fue declarada SIN LUGAR, y en la misma, la Jueza Orsini hace referencia a sus órdenes [sic] del 24 de abril de 2000, 8 de mayo de 2000 y 9 de junio de 2000. Para esas fechas no éramos [sic] la abogada en el caso y dichas órdenes nada tienen que ver con lo planteado en nuestra moción de relevo de sentencia.*

*Este es el tercer caso donde la Jueza Orsini tiene como partes a la Sra. Carmen Alvarez y el Sr. Gil*

*Segarra Esquivel. Con anterioridad a que asumiéramos la representación legal del Sr. Gil Segarra, ocurrió un incidente, el cual se relata en la declaración jurada que se aneja, que refleja la parcialización y prejuicio de la Jueza Orsini, no sólo en contra de esta abogada, sino en contra del Sr. Gil Segarra también. Entendemos que el prejuicio de la Jueza Orsini se debe a que tenía conocimiento de que esta abogada lo representa en otros casos.*

*En dicha ocasión, según surge de la declaración jurada del señor Segarra, la Jueza Orsini le imputaba a éste un conocimiento y la celebración de un contrato de servicios profesionales entre el Lcdo. Gamalier Rodríguez y el señor Segarra. En dicha ocasión, el señor Segarra compareció por derecho propio solicitando tiempo para contratar nueva representación legal debido al fallecimiento de su abogado. El Lcdo. Gamalier Rodríguez había radicado una moción de renuncia de representación en el caso -del expediente del tribunal no surge un sólo documento que indique que el Lcdo. Gamalier Rodríguez era abogado del Sr. Gil Segarra, tampoco del expediente que le fue entregado en la oficina del Lcdo. Manuel Rosario-, no obstante, la Jueza Orsini tomó como cierto lo informado por el licenciado Rodríguez en su moción sin tomar en consideración que el señor Segarra estaba en ese momento sin abogado.*

*Si era cierto que el Lcdo. Gamalier Rodríguez era abogado del señor Segarra al igual que el Lcdo. Manuel Rosario ¿por qué no se comunicó con el señor Segarra en el momento en que el licenciado Rosario fue hospitalizado y esperó a que éste falleciera para llamarlo a la oficina? Si se recibió una Sentencia Sumaria Parcial en la oficina del licenciado Rosario- mientras éste estaba en estado de coma en el hospital- que afectaba los derechos e intereses del señor Segarra, ¿por qué el Lcdo. Gamalier Rodríguez no notificó inmediatamente al señor Segarra para informarle sobre dicha sentencia parcial que le afectaba y esperó a que falleciera el licenciado Rosario para entonces informarle- cuando apenas quedaba una semana para que transcurrira [sic] el término para apelar y solicitarle $3,000.00 al señor Segarra? Un ciudadano no está obligado a que se le imponga la representación legal de un abogado. Es su derecho y prerrogativa el elegir un abogado de su confianza.*

*Elsa García Orta v. Sucesión Blas Villot- JAC2000-0231- En este caso representamos a la parte demandante. Este es un caso sumamente sencillo, donde la demandante, viuda del causante, desea liquidar la participación de los otros herederos en un bien inmueble que quedó al fallecimiento de su esposo y recurrió al tribunal ante la inercia de algunos de los herederos para realizar la partición.*

*Habiéndose emplazado a todas las partes y transcurrido el tiempo para contestar, la abogada que suscribe procedió a solicitar la anotación de la rebeldía de aquellos codemandados que no habían comparecido, ni contestado la demanda. Esta moción la radicamos el 18 de julio de 2000. El día 28 de julio de 2000, recibimos en correo ordinario una copia de moción de prórroga radicada el 23 de junio de 2000 por el abogado de los codemandados en cuestión. Dicha moción fue puesta en el correo el 26 de julio de 2000, es decir 33 días después de haber sido radicada. El día 3 de agosto de 2000 recibimos una ORDEN de la Jueza Orsini concediéndole 60 días al abogado para contestar la demanda. Ante esta situación radicamos una moción donde le expusimos al tribunal que dicho término era exagerado, habida cuenta de que es un caso sencillo que cumple con los criterios del plan piloto sobre aceleración del trámite de casos. Incluso le indicamos que los codemandados y su representación legal no habían expuesto fundamento o razón alguna que justificara una prórroga de 60 días a partir de la notificación. Además le solicitamos que ordenara a la parte codemandada a mostrar causa por la inexplicable e injustificada dilación en la notificación de su solicitud de prórroga. Nuestra moción fue despachada con un "Sin Lugar". Como cuestión de hecho, al día de hoy han transcurrido 90 días desde la notificación de la ORDEN de la Jueza Orsini concediendo la prórroga de 60 días y la parte codemandada aún no ha contestado, no empece haber expresado en su moción que se le conceda una prórroga de 60 días "a partir de la notificación para proceder inmediatamente con la contestación de la demanda". Toda esta situación nos causa la impresión de que la parte codemandada se siente favorecida por las órdenes del tribunal."*

En la resolución recurrida emitida por el Juez Sanabria se indica que dicho magistrado escuchó las

grabaciones de las vistas y estudió los expedientes de los tres casos. Dicha evaluación lo llevó a concluir que era innecesaria la celebración de una vista para recibir prueba demostrativa o en apoyo a la Petición de Recusación.

Asimismo, se desprende de la resolución recurrida que los señalamientos a los que hace referencia la Lcda. Beltrán con relación a su cliente y sobre ella misma son inmeritorios, pues surge de las declaraciones y los expedientes analizados que en todo momento la Jueza Orsini ha sido cortés, ecuánime, justa en sus determinaciones, imparcial y no ha reflejado en sus actuaciones motivaciones o influencias impropias hacia alguna de las partes o sus abogados. Al contrario, el Juez Sanabria Pérez indica que en todo momento la Jueza Orsini ha velado porque se garantice el debido proceso a las partes y se ha preocupado por evitar dilaciones en el trámite de los casos a fin de lograr una rápida y eficaz solución de los mismos. La Jueza, según se desprende del escrito, al tomar sus determinaciones, expone las razones por las cuales las toma y fundamenta en derecho las mismas.

Asimismo, el foro recurrido indica que está convencido que las actuaciones de la Jueza Orsini no han lesionado, ni vulnerado, el debido proceso de ley, ni los derechos que le asisten a los clientes de la Lcda. Beltrán, ni reflejan o aparentan interés en el resultado o tener prejuicio o parcialidad hacia las partes envueltas o sus abogados. De igual manera, indica que las imputaciones contenidas en la solicitud de recusación y los documentos que le acompañan no responden a la realidad de lo acontecido según surge de los procedimientos grabados que dicho tribunal escuchó. Concluye que de lo que revela el récord, se desprende que no existe fundamento de recusación que inhabilite a la Jueza Orsini.

Este Tribunal ha examinado los documentos sometidos junto con la Petición de Inhibición. Los argumentos que presenta la Lcda. Beltrán y que son la base de su petición, se refieren a determinaciones judiciales de la Jueza Orsini. Como reseñamos anteriormente, la imputación de parcialidad o prejuicio, como punta de lanza para obtener la inhibición o recusación de un juez, deben cimentarse en cuestiones personales serias, no triviales, ni judiciales. *Ruiz Rivera v. Pepsico, supra.* Nada surge de los documentos examinados que nos lleve a determinar que las actuaciones de la Jueza Orsini están basadas en cuestiones personales.

Por otro lado, las determinaciones judiciales de la Jueza Orsini en los casos señalados por la Lcda. Beltrán, que entienda ella sean erróneas o no en derecho, pueden ser revisadas mediante los mecanismos que para ello dispone el ordenamiento jurídico. Es reprobable utilizar la moción de inhibición para expresar inconformidad con las decisiones del tribunal. Por último, sólo una de las determinaciones judiciales tomadas por la juez ha sido recurrida.

Una evaluación de los escritos indica que la jueza ha sido diligente y justa en la tramitación del caso, aun emitiendo una orden a la parte contraria de imposición de sanciones en uno de los pleitos mencionados previo a enterarse de la Petición de Recusación.

El análisis de lo planteado por el Juez Sanabria Pérez, nos lleva a concluir que dicho juez evaluó de manera concienzuda toda la prueba, no encontrando circunstancias que justificaran la inhibición de la Jueza Orsini. Cabe inclicar que un magistrado no tiene que hacer referencia a cada uno de los documentos sometidos por una parte al emitir su dictamen. No obstante, surge de la resolución recurrida que el Juez Sanabria escuchó las grabaciones de las vistas y estudió los expedientes de los casos señalados por la Lcda. Beltrán.

Asimismo, la Lcda. Beltrán plantea como tercer error que el Juez Sanabria tomó de las grabaciones de las vistas que escuchó, sólo aquellas partes que beneficiaban las decisiones de la Jueza Orsini, lo que le llevó a emitir un juicio prejuiciado y parcializado. Sin embargo, nada hay en el escrito de *certiorari* que sustente lo alegado. Meramente se hace mención a que la percepción que hace el Juez Sanabria Pérez de las actuaciones de la Jueza en las vistas celebradas, es una exagerada.

Una evaluación del expediente ante este Tribunal nos lleva a la misma conclusión que la tomada por el Juez Sanabria. La Lcda. Beltrán no plantea ninguna situación que nos lleve a resolver que la conducta de la Jueza Orsini denotó parcialidad o prejuicio personal en su contra, ni tampoco la decisión emitida por el Juez Sanabria.

No podemos decir que se ha establecido por la Lcda. Beltrán que las actuaciones o determinaciones tomadas por la Jueza Orsini fuesen caprichosas o irrazonables o que de las alegaciones pudiésemos inferir algún tipo de prejuicio o parcialidad. Las alegaciones son argumentativas y conclusorias. Sin embargo, las determinaciones judiciales señaladas descansan en fundamentos jurídicos. Ante tales decretos judiciales, no puede prevalecer duda alguna la imparcialidad para adjudicar. Meras interpretaciones subjetivas motivadas por decretos judiciales que le son adversos a una parte o su representación legal, no establecen razón para una recusación. El Tribunal Supremo de los Estados Unidos ha expresado que *judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required when no extrajudicial source is involved. Almost invariably, they are proper for appeal, not for recusal." Liteky v. United States, supra.* Las mociones de recusación bajo fundamento de prejuicio o imparcialidad deben ser evaluadas a la luz de un criterio riguroso. *U.S. v. Thompson*, 38 F. 2d 528; *United States v. Carmichael*, 726 F. 2d 158, 160 (4th Cir. 1984); *Blizard v. Fielding*, 454 F. Supp. 318 (D. Mass.), confirmado en 601 F. 2d 1217.

En referencia al cuarto error invocado, debemos indicar que la determinación del tribunal recurrido de notificar al Juez Presidente del Tribunal Supremo y a la Directora Ejecutiva de la Oficina de la Administración de los Tribunales la resolución recurrida, es una de naturaleza administrativa, no sujeta a revisión judicial.

Por último, este Tribunal no puede pasar por alto ciertos aspectos del caso ante nos que nos preocupan.

En primer lugar, hemos observado que durante los pasados meses se han presentado otras Peticiones de Recusación contra la Jueza Orsini. ■ En el caso de autos, participó como notario la abogada que presentó una de las Peticiones de Recusación anteriores. Recordamos a las distinguidas letradas que un procedimiento de inhibición afecta la reputación profesional de un magistrado, así como la relación con sus deberes y obligaciones como juez. En ninguno de los casos ante este Tribunal se pudo determinar que existía apariencia de parcialidad de la Jueza Orsini, así como alguna conducta que pudiese minar la confianza pública en el sistema judicial.

Un abogado, en el fragor de su defensa, puede observar actitudes que interprete como perjudiciales para su representado. Ante las mismas, se puede reflejar cierto malestar e inconformidad ante decretos judiciales que le han resultado adversos o donde no ha prevalecido el abogado o su cliente. Reiteramos, sin embargo, que nuestro sistema judicial provee los mecanismos para revisar determinaciones judiciales que sean erróneas o contrarias a derecho.

En segundo término, el lenguaje por la Lcda. Beltrán en su recurso al referirse tanto a la Jueza Orsini como al Juez Sanabria, no fue el más indicado. Le recordamos a la Lcda. Beltrán que el Canon de Etica 9, 4 L.P.R.A. Ap. IX, Canon 9, exige a los abogados y abogadas observar el mayor respeto para con los tribunales y los jueces. Así, también, fueron desacertados los comentarios de la Lcda. Beltrán que surgen en la Petición de Recusación en torno a la situación de búsqueda de representación legal de su cliente, el señor Gil Segarra Esquivel, cuando le manifestó *"le aconsejamos que se buscara otro abogado, en vista de que esta abogada estaba confrontando problemas en la sala de la Jueza Orsini y no queríamos perjudicar su caso"*. Sobre el particular citamos:

*"La fe en la justicia se nutre y se fortalece con el concepto de alta moralidad que se tenga de quienes la imparten. En el descargo de su obligación como servidores de la justicia, los abogados deben ser celosos guardianes del prestigio de quienes tienen esa difícil y noble misión. Jamás deben hacerse eco de información*

*que pueda desmerecerles, a menos que estén en condiciones de substanciarla cumplidamente. Deben·recordar que la calumnia respecto a los hombres de honor, siempre deja huella de infamia."* In re: Criado, 108 D.P.R. 642 (1979).

## V

Por los fundamentos antes expuestos, se expide el auto y se confirma la resolución recurrida.

Así lo acordó el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General

### ESCOLIOS 2001 DTA 155

**1.** KLAN-98-00124, Circuito Regional II - Bayamón, Panel integrado por los Jueces Sánchez Martínez, Broco Oliveras y Urgell Cuebas.

KLAN-01-00226, Circuito Regional V - Ponce, Panel integrado por el Juez Sánchez Martínez y las Juezas Ramos Buonomo y Cotto Vives.

**2.** KLCE-00-00633 y KLCE-00-00733.